**23 So.2d 204**

### STATE v. RODMAN.

#### No. 37792.

June 29, 1945.

G. Wray Gill, of New Orleans, for defendant and appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and James P. O'Connor, Jr., Dist. Atty., and Joseph F. Monie, Asst. Dist. Atty., both of New Orleans, for appellee.

HAWTHORNE, Justice.

The accused, Harry Rodman, was convicted of armed robbery. Before sentence he was charged with being a second offender and found guilty as such, and was sentenced to serve nine years in the penitentiary. He appealed.

In the court below, 11 bills of exception were reserved, but, under the view which we take, it is necessary to discuss only Bills Nos. 8, 10, and 11, as the other bills cover matters which will probably not arise on a subsequent trial.

### Bills of Exception Nos. 10 and 11.

Bill No. 10 was reserved to the trial judge's overruling of a motion to quash the bill of information charging the defendant with being a second offender under the provisions of Act 45 of 1942, and Bill No. 11 was reserved to the overruling of a supplemental motion for a new trial. Both of these bills urge that, at the date of the alleged armed robbery and at the time of defendant's conviction for said crime, and also at the time of his prosecution in this state as a second offender, he was on parole from the Michigan State Penitentiary under a conviction of the crime of armed robbery, and could not be prosecuted as a second offender on the basis of that conviction because he was still serving the sentence for the Michigan crime.

The first paragraph of Section 1 of Act 45 of 1942 reads as follows:

"That any person who, after having been convicted within this state of a felony, or who, after *having been convicted under the laws of any other state* or of the United States, or any foreign government or country of a crime which, if committed in this state, would be a felony, commits any felony within this state, upon conviction of such felony, shall be punished as follows: * * *." (Italics here and elsewhere in this opinion are ours.)

We see no merit in these bills. As pointed out by the trial judge in his per curiam, it is the *conviction,* under the laws of any other state or of the United States or any foreign government or country, of a crime which, if committed in this state, would be a felony, which makes a defendant subject to the provisions of the act in question, provided, of course, that such individual has not received a complete and full pardon therefor previous to his conviction in this state.

### Bill of Exception No. 8.

Bill No. 8 recites that, after the jury had deliberated for one hour and 15 minutes, they returned into court, and that the following colloquy took place between the judge and the foreman of the jury:

" 'Your Honor, we can not agree and wish to report a mistrial.' and the Court, upon receiving this statement, said:

" 'The Court will not accept a mistrial and you must deliberate further.'

"The juror then said:

" 'We are hopelessly divided and we can not possibly agree.'

"The Court then said you have got to renew your deliberations, or words to that effect. The Juror then said:

" 'Well, suppose we can't ever agree.'

"The Court then again stated that they must return to the Jury room."

Based upon the above, counsel for defendant then moved the court to enter a mistrial, contending that the report of the jury was a verdict, finding, in effect, a mistrial for the defendant, and that said verdict should be recorded, and, upon the court's refusing to enter such a mistrial, counsel objected and reserved this bill of exception.

 It is well settled that, when the court is informed by a jury that they cannot agree, it is not error for the court to impress upon them the importance of the case, urge them to come to an agreement, and send them back for further deliberation; for the question of the discharge of the jury because of inability to agree on a verdict is within the sound discretion of the trial court, and the exercise of such discretion is not ordinarily subject to review. Code of Criminal Procedure, Article 397; State v. Dudoussat, 47 La.Ann. 977, 17 So. 685; State v. Fuselier, 51 La. Ann. 1317, 26 So. 264; State v. Seals, 135 La. 602, 65 So. 756.

Although the question of the discharge of a jury because of inability to agree on a verdict is one within the sound discretion of the trial court, we are impressed in this case with the manner in which the court exercised its discretion as reflected by the language used, as set forth in the bill.

 We are of the opinion that, when the jury came into court, stated that they could not agree, and wished to report a mistrial, the statement of the trial judge to the effect that the court would not accept a mistrial and that they must deliberate further was, in effect, coercing a verdict either of guilty as charged in the information or of any lesser offense contained therein, or of not guilty, and this statement, in our opinion, deprived the accused of the right to a mistrial in the event the jury could not agree. The fact that the jury so understood the statement is reflected by their reply to the effect that they were hopelessly divided and could not possibly agree, when the court stated to them that they must renew their deliberations, and by their reply, "Well, suppose we can't ever agree."

The record discloses that, after the above had occurred and the jury had returned to the jury room, they deliberated for somewhat less than one hour and then returned a verdict of guilty as charged. Upon the jury's being polled, they were found to have voted nine for the verdict and three for not guilty.

In State v. Ladd, 10 La.Ann. 271, the jury, after deliberating at length, informed the judge that they could not agree, and the judge thereupon stated that he must have a verdict in the case, that it was one of peculiar character, and that he had reason to believe that some of the jury had

been tampered with previous to the trial. This court, in reversing the conviction in that case, held that these remarks, under the circumstances, had a natural tendency to coerce the jury into finding a verdict from improper motives.

It is true that the remarks of the trial judge there went considerably further than the remarks of the trial judge in the case now under consideration, in that in the cited case the trial judge, after stating that he must have a verdict, further emphasized the fact that he had information that the jury had been tampered with. However, we are unable to discover any difference between the statement there "I must have a verdict" and the statement in the instant case "The Court will not accept a mistrial." In our opinion, these statements mean the same thing, and would tend to have the same effect on a jury—that is, the effect of coercing a verdict.

 American Jurisprudence, Volume 53, "Trial," Section 951, page 671, states the rule as follows:

"*Coercion.*—The old rule of the common law permitting coercion of a jury in order to secure a verdict has been swept away, and under our present jury trial system, the independence of a jury is respected. The verdict of a jury should be free and untrammeled, and cannot now stand. where the jury have been subjected to any statements or directions naturally operating to coerce or threaten them to reach an agreement, whether the coercive acts or statements originate with the judge, or whether they are traceable to the bailiff or other officers of the court, to a party to the action,

or to spectators or strangers at the trial. The judge must not attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict. While he may advise and persuade, he may not say or do anything which will drive the jury to a decision. *There should be nothing in intercourse between the trial judge and jury having the least appearance of duress or coercion."*

We are convinced that our learned brother below had no intention of coercing the jury or influencing a verdict in this case. We cannot, however, escape the conclusion that the words used may have had this effect, although they were not so intended by the trial court.

In supplemental brief filed since argument in this court, counsel for the State contend that the sole and only questions presented by this bill of exception are whether or not the report of the jury that they could not agree was a verdict, and whether the judge, by refusing to accept said mistrial, deprived the defendant of a verdict of a mistrial.

We cannot agree with the State's contention and are of the opinion that we should consider the bill in its entirety. The bill sets forth in detail the colloquy between the trial judge and the jury, which colloquy was in truth and in fact the basis of the bill, although no specific objection was made in the bill to the remarks of the trial judge. However, counsel for defendant urged this point in brief and in argument before this court.

We are of the opinion that the language used by the court addressed to the jury,

under the circumstances of this case, may have had the effect of coercing them to agree upon a verdict, and is therefore reversible error.

The expression "The Court will not accept a mistrial." coming from the trial judge himself, carried great weight with the jury, as he was the presiding officer of the court, and they were under the sworn duty to accept the law applicable to the case as given to them by him, and this in itself might have impaired the right of the accused, granted by the Constitution, to a trial by a fair and impartial jury.

For the reasons assigned, it is ordered, adjudged, and decreed that the verdict of the jury and the sentence of the court be annulled and set aside; a new trial is granted, and the case is remanded to the lower court for further proceedings consistent with the views herein expressed.