315 So.2d 639 (1975)
STATE of Louisiana
v.
Herbert NICHOLSON.
No. 55677.
Supreme Court of Louisiana.
June 23, 1975.
*640 Bernard A. Horton, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
The Orleans Parish Grand Jury returned an indictment charging the defendant with the aggravated rape of an eleven-year-old girl. After a trial by jury the defendant was found guilty and sentenced to death. Upon his appeal to this Court defendant relies on nine assignments of errors for a reversal of his conviction and sentence. Having found merit in Assignment of Errors No. 8, we deem it unnecessary to consider most of the other assignments.
The evidence adduced by the State reveals that the defendant raped the eleven-year-old companion of two of his nieces on September 22, 1973. During that evening the prosecutrix accompanied her companions and members of their family to an automobile dealership. She left the dealership with the young girls and their uncle, the defendant. The prosecutrix testified that the defendant left his nieces on Congress Street and proceeded to a location under a bridge, an area filled with weeds and bushes, where the rape occurred. Two New Orleans policemen on patrol spotted the defendant's parked car and decided to investigate its presence under the bridge. Upon approaching the automobile the officers noticed two people, a male and a female, in the rear seat. As the officers approached the parked automobile one of them observed the defendant fumble toward his waistband. At that time the officer drew his service revolver and ordered the man to exit the car. Upon speaking with the young girl, the officers arrested the defendant for aggravated rape. The trial and the conviction which we review followed.
The verdict of guilty which forms the basis for this defendant's conviction and death sentence was returned by the twelve man jury after less than nine hours' deliberation. The record indicates that the jury, after having previously returned to the courtroom for reinstruction, again returned into open court five hours after it *641 had retired. In response to an inquiry by the court, a juror indicated that no verdict had been reached and that the jury was at a hopeless impasse. The court then asked if any of the jurors thought additional instructions would be helpful and a juror indicated that he thought that further instructions would possibly be beneficial. At that time the defendant moved for a mistrial; the motion was denied by the trial court. Without further inquiry to determine if other jurors felt the deadlock could be broken, the trial court then delivered to the jury a modification of a jury instruction commonly known as an "Allen charge," an instruction acknowledged to be calculated to "dynamite" jury deadlocks and achieve jury unanimity. Approximately two hours after the giving of this "Allen charge" the jury requested further instructions on a point of law. Having received the requested further instruction, the jury resumed deliberations and returned a verdict of guilty as charged one and a half hours later.
The defendant complains that the trial court's denial of his motion for mistrial and the subsequent giving of the "Allen charge" denied him his right to a fair trial. An extensive evaluation of the "Allen charge" is necessary for a determination of the merits of the defendant's claim.
The "Allen charge" received the approval of the United States Supreme Court in 1896. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Since that time most state courts and many federal courts of appeal have at some time accepted the use of the "Allen charge" or some modification thereof. See, Annot., 100 A.L.R.2d 177. However, in recent years, a growing number of federal courts of appeal and state courts have expressly disapproved the use of an "Allen charge" and numerous law review commentaries have severely criticized this so-called "dynamite" charge. See, e.g., United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971); United States v. Fioravanti, 412 F.2d 407 (3rd Cir. 1969), cert, denied Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); United States v. Brown, 411 F.2d 930 (7th Cir. 1969), cert, denied 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970); Fields v. State, 487 P.2d 831 (Alaska 1971); State v. Thomas, 86 Ariz. 161, 342 P.2d 197 (1959); State v. Randall, 137 Mont. 534, 353 P.2d 1054 (1960); State v. Garza, 185 Neb. 445, 176 N.W.2d 664 (1970); State v. Marsh, 260 Or. 416, 490 P.2d 491 (1971); Commonwealth v. Spencer, 442 Pa. 328, 275 A.2d 299 (1971); State v. Ferguson, 84 S.D. 605, 175 N.W.2d 57 (1970); Note, The Allen Charge: Recurring Problems and Recent Developments, 47 N.Y.U.L.Rev. 296 (1972); Comment, The Allen Charge: Dead Law a Long Time Dying, 6 U. San Francisco L.Rev. 326 (1972).
Many of the numerous jurisdictions which have banned the use of the "Allen charge" have made exhaustive analyses of the effect of such a charge on a deadlocked jury and the reasons for abolition of it advanced by opponents of the charge. An examination of the charge given in the instant case convinces us that it contains many of the offensive elements which courts in other jurisdictions and legal scholars have found to militate in favor of the abolition of such charges. We disapprove the use of the modified "Allen charge" in the instant case and reverse the defendant's conviction and sentence because of its use. In addition, we henceforth ban the use of the "Allen charge" and of any coercive modification thereof in the courts of Louisiana.
The first paragraph of the substantive part of the charge emphasizes that there must, "sooner or later," be a disposition of the case. The court focuses on the lack of any basis for believing that the case could later be tried better by a more intelligent, more impartial or more competent jury, unmistakably indicating to the lay jury that if the case were to end in a mistrial it would definitely have to be tried again. The tenor of such instructions, in *642 conveying to the deadlocked jury the impression that their inability to reach a verdict would absolutely insure the expenditure of time and money necessitated by a complete retrial, is somewhat misleading. "* * * Despite the possibility that a case may be retried and decided, the prosecution may conclude after a mistrial that it simply does not possess evidence sufficient to justify another trial and decide to drop charges completely. * * *" Note, The Allen Charge: Recurring Problems and Recent Developments, supra, at 303. We believe that the implications of this portion of the charge are misleading and present a substantial risk that a juror or jurors possessed of a genuine conviction that reasonable doubt exists would thereby be coerced into agreement with a majority voting to render a guilty verdict.
Next we note that while giving lip service to the view that no juror is requested to surrender his conscientious convictions, the trial court minimized the effect of this by saying that "[i]t is unnecessary to add * * *" that statement to its charge. The trial court's pronouncement, like so many others which appear in the charge, clearly indicates that the general principles which govern jury deliberations are undermined and weakened when an "Allen charge" is given in response to notice that the jury has failed to reach a verdict and considers itself deadlocked. Each time a general principle applicable to deliberations is stated, it is modified by a remark apparently calculated to render the desirability of reaching a verdict foremost in the jurors' minds.
In the course of giving its instruction, the trial court admonished the jurors that if a majority favor conviction, the minority should consider whether their doubts are reasonable, since they make no effective impression upon the minds of "* * * so many equally honest, equally intelligent fellow jurors. * * * " Likewise, the court instructed that if a majority or a lesser number favor acquittal, the other jurors should ask themselves whether they do not have reason to doubt the correctness of a judgment not concurred in "* * * by many of their fellow jurors. * * * " (Emphasis here and elsewhere supplied.) This portion of the charge we find untenable on two counts. First, such a charge virtually insures jury confusion; it urges those favoring conviction or acquittal to discount their views if they are in the minority or in a bare majority. Thus, the instruction is clearly an attempt to avoid the coercive effect of admonition of only the minority and to achieve a balanced charge. Such a charge is so difficult to comprehend that, as indicated in United States v. Fioravanti, supra, it is "* * * an invitation to a frolic with Alice in Wonderland." Second, by framing the charge in such a way as to encourage majority consideration of minority views only when the minority view is held "* * * by many of their fellow jurors, * * *" the court's charge fails in its balancing attempt and in effect urges conformity with majority (or near majority) views, clearly discrediting the positions of members of the minority if the minority is less than substantial. "* * * When efforts to secure a verdict from the jury reach the point that a single juror may be coerced into surrendering views conscientiously entertained, the jury's province is invaded * * *." United States v. Thomas, supra, at 1181.
Although the language of the supplemental instructions was not expressly coercive, we find applicable the following quotation from State v. Rodman, 208 La. 523, 23 So. 2d 204 (1945). In that decision this Court reversed a defendant's conviction because the trial court expressed to a reportedly deadlocked jury that it would not accept a mistrial, stating:
"We are of the opinion that the language used by the court addressed to the jury, under the circumstances of this case, may have had the effect of coercing them to agree upon a verdict, and is therefore reversible error.

*643 "The expression `The Court will not accept a mistrial.' coming from the trial judge himself, carried great weight with the jury, as he was the presiding officer of the court, and they were under the sworn duty to accept the law applicable to the case as given to them by him, and this in itself might have impaired the right of the accused, granted by the Constitution, to a trial by a fair and impartial jury."
In disapproving the use of the modified "Allen charge" in this case and in prohibiting the future use of a verbatim "Allen charge" or any modification which contains the coercive elements we have discussed in this opinion, we note that the Louisiana courts have functioned adequately for the eighty years since the United States Supreme Court's decision in Allen without apparent resort to the coercive method inherent in that charge. We do not believe that the use of such a coercive procedure should be approved now, at a time when jurisprudential and scholarly disapproval appears to approach universality.
Recognizing that there will be times when a court may wish to give supplemental instructions after the jury has retired, we express our approval of the guidelines set forth in the American Bar Association Standards Relating to Trial by Jury (Approved Draft 1968), insofar as they are applicable in our state, where unanimous verdicts are not required in certain classes of cases. See State v. Marsh, supra, 490 P.2d at 503. In section 5.4, the Standards set forth guidelines denominated (a)(i) through (a)(v), to which a trial court should adhere if it wishes to give further instructions upon its determination that the jury has been unable to agree. A determination of when such supplemental instructions shall be given is still in the discretion of the trial court, La.C.Cr.P. art. 775, subject to this Court's review upon an allegation that there has been an abuse of that discretion. See the Official Commentary to Section 5.4(b) of the ABA Standards, cited supra.
In disapproving the "Allen charge" and its many variants we attempt to insure that the Court will not become enmeshed in the difficulties which arise in the administration of justice as a result of the existence and use of such a procedure. In State v. Thomas, supra, a case which involved the use of a coercive jury charge which was a modification of the "Allen charge," the Supreme Court of Arizona noted:
"This instruction has been before us four times. When and wherever its use is called into question it must stand or fall upon the facts and circumstances of each particular case. It has given, and we believe each use will give us, harassment and distress in the administration of justice. No rule of thumb can circumscribe definite bounds of when and where, or under what circumstances it should be given or refused.
"It now appears that its continued use will result in an endless chain of decisions, each link thereof tempered and forged with varying facts and circumstances and welded with ever-changing personalities of the appellate court. This is not in keeping with sound justice and the preservation of human liberties and security. We are convinced that the evils far outweigh the benefits, and decree that its use shall no longer be tolerated and approved by this court."
Notwithstanding our finding of reversible error in Assignment of Errors No. 8 dealing with the modified "Allen charge," we feel that another issue raised on this appeal which may arise on retrial requires brief attention. Assignment of Errors No. 3 complains that the trial court improperly curtailed the defendant's cross-examination of a State's witness, the victim's mother. While we do not determine the merit of this claim, we note that the issue presents a possible violation of the defendant's Sixth Amendment right to cross-examination *644 and feel that the matter may warrant the prosecution's attention at the time of retrial. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931).
For the reasons assigned, the defendant's conviction and sentence are reversed and the case is remanded for a new trial.
SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents for reasons assigned by SANDERS, C. J.
SANDERS, Chief Justice (dissenting).
After closing argument, the jury retired to deliberate. Approximately one and one-half hours later, the jury returned to the courtroom and reported that it had been unable to agree on a verdict. The trial judge asked if it would be helpful if he gave additional instructions. A jury indicated that additional instructions would be helpful. At this point, defense counsel moved for a mistrial. The judge overruled the motion for a mistrial and gave additional instructions.
The instructions read in part as follows:
"As you know, this is an important case because all cases are important. If you fail to agree on a verdict, the case is left open and undecided. Like all cases, it has to be disposed of sooner or later. There does not appear to be any reason to believe that the case can be tried again better, or more exhaustively, than it has been before you today. Any future jury must be selected in the same manner and from the same sources as you have been chosen. So there appears no reason to believe that the case would ever be submitted to twelve men or women for that matter more intelligent, more impartial, or more competent to decide it, or that more clearer evidence could be produced on behalf of either side.
"Of course, these matters suggest themselves, upon brief reflection, to all of us who have sat through this trial. The only reason these are mentioned is because some of them may have escaped your attention which must have been fully occupied up to this time in reviewing the evidence. They are matters which, along with other and perhaps more obvious ones, remind us how important and desirable it is that you unanimously agree upon a verdict, if you can do so without violence to your individual judgment and your conscience.
"It is unnecessary to add, members of the jury, that this Court does not wish any juror to surrender his conscientious convictions. As stated in the instructions given at the time the case was submitted to you, do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.
"However, I wish to repeat that it is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to your independent judgment. Each one of you must decide the case for yourself, but you should do this only after consideration of the evidence with your fellow jurors. And in the course of your deliberations, you should not hesitate to change your opinion, when convinced it is erroneous. In order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor and frankness and with proper deference to, and regard for, the opinions of each other. That is to say, in conferring together, *645 each of you should pay due attention and respect to the views of the other and listen to each other's arguments with a disposition to re-examine your own views. If much the greater number of you are for a conviction, each dissenting juror ought to consider whether a doubt in his or her mind is a reasonable one, since it makes no effective impression upon the minds of so many equally honest, equally intelligent fellow jurors who bear the same responsibility, serve under the sanction of the same oath, and have heard the same evidence, we may assume, the same attention and equal desire to arrive at the truth.
"On the other hand, if a majority, or even a lesser number of you, are for acquittal, other jurors ought seriously to ask themselves, again, whether they do not have reason to doubt the correctness of a judgment which is not concurred in by many of their fellow jurors, and whether they should not discuss the weight or sufficiency of the evidence which fails to convince the minds of several of their fellows to a moral certainty and beyond a reasonable doubt."
The first error in the majority opinion is in labelling the foregoing instructions to the jury as the "Allen charge." See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). If the instructions are to be compared to the charge considered in Allen v. United States, they could be accurately described as a substantial modification of that charge.
In Sanders v. United States, 415 F.2d 621 (5th Cir. 1969), cert. denied 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271, the United States Fifth Circuit Court of Appeals approved a charge almost identical to the one given here, holding:
". . . As this court said in Thaggard v. United States, 354 F.2d 735, at 739 (5th Cir. 1966), the Allen charge `so long as it makes plain to the jury that each member of the jury has a duty conscientiously to adhere to his own honest opinion and avoids creating the impression that there is anything improper, questionable, or contrary to good conscience for a juror to cause a mistrial * * * is still a permissible charge to be given in proper circumstances in this Circuit.' The charge here complained of cannot be faulted as to any of these criteria. In fact the complaint sometimes leveled at the Allen charge, namely, that it contains no admonition that the majority re-examine its position, see United States v. Fioravanti, 3d Cir. 1969, 412 F.2d 407 [June 16, 1969], does not apply here because the trial court knowing how the jury stood varied the orthodox charge so that one sentence reads as follows: `On the other hand, if a majority, or even a lesser number of you, are for acquittal, other jurors ought seriously to ask themselves, again, whether they do not have reason to doubt the correctness of a judgment which is not concurred in by many of their fellow jurors, and whether they should not discuss the weight or sufficiency of the evidence which fails to convince the minds of several of their fellows to a moral certainty and beyond a reasonable doubt.'"
The American Bar Association Standards Relating to Trial By Jury § 5.4 approves a repeated instruction to a jury which has been unable to agree covering the following subjects:
"* * *
"(i) that in order to return a verdict, each juror must agree thereto;
"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
"(iii) that each juror must decide the case for himself, but only after an impartial *646 consideration of the evidence with his fellow jurors;
"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict
* * *"
The present charge, in my opinion, does not go beyond the subject matter approved in the American Bar Association Standards. In any event, the reversal of the present conviction because of the charge is contrary to the overwhelming weight of authority in the United States. See Annot., 100 A.L.R.2d 177, 182-184; 76 Am.Jur.2d, Trial, § 1063, pp. 57-58.
Article 808 of the Louisiana Code of Criminal Procedure contemplates the giving of further charges after the jury has begun its deliberations. Two major limitations apply to supplemental charges. The trial judge may not comment upon the facts of the case. LSA-C.Cr.P. Art. 806. Nor may the trial judge coerce the jurors into agreeing on a verdict. See State v. Rodman, 208 La. 523, 23 So.2d 204 (1945).
Apart from these major limitations, the giving of a supplemental charge to a jury stressing the responsibility of jurors rests within the sound discretion of the trial court.
I find no abuse of discretion on the part of the trial judge.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Chief Justice.