908 So.2d 60 (2005)
STATE of Louisiana
v.
Alan DABNEY.
No. 05-KA-53.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 2005.
*61 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Assistant *62 District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and MARION F. EDWARDS.
THOMAS F. DALEY, Judge.
On November 5, 2002, the Jefferson Parish District Attorney filed a Bill of Information charging the defendant, Alan Dabney, with: Count 1, conspiracy to commit armed robbery, in violation of LSA-R.S. 14:26 and 14:64; Count 2, attempted armed robbery, in violation of LSA-R.S. 14:27 and 14:64; and Counts 3, 4, 5, and 6, armed robbery, in violation of LSA-R.S. 14:64.[1] The defendant was arraigned on November 7, 2002, and pled not guilty. On August 20, 2003, the State entered a nolle prosequi as to Count 4.
On August 20 and 21, 2003, the case was tried before a 12-person jury, which found the defendant not guilty on Counts 1 and 2 and guilty on Counts 3, 5, and 6. The trial court sentenced the defendant, on November 3, 2003, to imprisonment at hard labor for 50 years on Counts 3, 5, and 6 without benefit of parole, probation, or suspension of sentence; the sentences to run concurrently. On November 18, 2003, the defendant filed a Pro Se Motion for New Trial that was denied as untimely.
The defendant filed a Pro Se Writ Application requesting an appeal on December 5, 2003 that this Court denied, stating that the defendant must apply for reinstatement of his appeal rights in the district court.[2] The defendant filed an Application for Post-Conviction Relief seeking reinstatement of his appeal rights, on February 2, 2004. On February 6, 2004, the trial court granted the defendant's out-of-time appeal.[3]
In his sole Assignment of Error, the defendant argues that his defense counsel rendered ineffective assistance by failing to object to the use of a modified Allen[4] charge under the circumstances.
The defendant claims that his trial counsel was ineffective for failing to object to the use of a modified Allen charge when the jury announced it could not reach a verdict and, as a result, he was denied a fair trial.
The State argues that the instruction did not rise to the level of a prohibited Allen/Nicholson charge and, therefore, counsel was not deficient in failing to object to the supplemental instruction. In addition, the State claims that the defendant cannot demonstrate that he was prejudiced by his counsel's failure to object, in that the jury's verdict of ten to two indicated the supplemental instruction did not have a coercive effect. Finally, the State contends that the defendant cannot demonstrate that his attorney's failure to object to the charge was not the result of trial strategy.
A claim for ineffective assistance of counsel is most appropriately addressed through an Application for Post-Conviction Relief filed in the trial court, where a full evidentiary hearing can be conducted, *63 rather than on direct appeal. State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by Assignment of Error on appeal, it may be addressed in the interest of judicial economy. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1247, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001).
In this case, we consider the defendants assigned error, because the record contains sufficient evidence to rule on the merits of his claim and the issue was properly raised by Assignment of Error on appeal. In State v. Washington, 93-2221 (La.App. 1 Cir. 11/10/094), 646 So.2d 448, 453-455 and State v. Jones, 97-1687 (La. App. 1 Cir. 5/15/98), 714 So.2d 819, 824-826, writ denied, 98-1597 (La.10/30/98), 723 So.2d 975, appellate courts considered ineffective assistance of counsel claims as they related to Allen charges.
A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). Under the Strickland test, the defendant must show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068.
A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065.
There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel's perspective at the time. State v. LaCaze, 99-0584, p. 20 (La.1/25/02), 824 So.2d 1063, 1078-1079, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002).
The record indicates that the jury began deliberating at 1:32 p.m.[5] At 3:15 p.m., the jury returned with a written question, asking for the definitions of principal, armed robbery, and first degree robbery. The trial judge read the definitions as requested, and the jury was escorted from the courtroom for additional deliberations. The jury returned at 3:40 p.m. with their verdicts, finding the defendant not guilty on Counts 1 and 2 (conspiracy to commit armed robbery and attempted armed robbery, respectively) and guilty on Counts 3, 4, and 5 (the armed robbery charges).
*64 However, when a poll was taken, the trial judge learned that there were only 8 votes to convict on Counts 3, 4, and 5. The trial judge proceeded to tell the jury that it would take 10 out of 12 of them to convict, and that he was sending them back to deliberate. Defense counsel and the prosecutor agreed beforehand that the trial judge should give that statement. At 4:10 p.m., the jury returned with a written question and statement: "[I]f we don't agree what happens. We cannot come to a conclusion."
The trial judge asked counsel for their suggestions on how to handle the situation. The prosecutor thought that an Allen charge was necessary. Defense counsel told the trial judge that he thought he should tell the jury "to go back in there and try some more." The trial judge suggested reading the elements of the crimes again, but the prosecutor disagreed with that approach. The trial judge read a proposed charge:
. . . do not hesitate to re-examine your own views and to change your opinion if you are convinced you are wrong. But do not surrender your honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. In order to convict the defendant of the offense charged, you must find beyond a reasonable doubt that the State proved every element of the offense charged.
The prosecutor disagreed with that charge, stating that he thought the only charge that would be responsive to the jury's inquiry would be an Allen charge. When the trial judge asked defense counsel if he agreed, defense counsel responded affirmatively. The trial judge then said that since both sides suggested he read an Allen charge, he would try to give them a charge "in between." The prosecutor objected again, stating that the jury's complaint was very specific and reiterated his request for an Allen charge.
The trial judge hesitated giving the jury an Allen charge because he knew of cases where everyone agreed that an Allen charge should be given and, when that was done, the cases were reversed on appeal. The trial judge said that he did not want that to happen in this case. Defense counsel said he had seen that also and asked the trial judge how he was thinking of charging the jury. The trial judge advised counsel of his intended instruction:
The verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of others: you should examine the issues submitted with candor and with a proper regard in deference to the opinions of each other. It is your duty to decide this case, if you can, conscientiously. You should listen with a disposition to be convinced to each others arguments. I guess I should say, of each other's arguments. The very object of the jury system is to secure a verdict by comparison of views, by arguments among the jurors themselves. If much the larger number of jurors are of one opinion, a desenting (sic) juror should consider whether his or her opinion is reasonable in view of the fact that his or her opinion made no impression upon the minds of equally honest and equally intelligent people.
Again, I instruct you that it is your duty to decide the case. In other words, reach a verdict but only if you can conscientiously do so.
Defense counsel then asked for a moment to confer (with his client). The trial judge informed counsel that this Allen charge was given in another case, and was the basis for a mistrial. Defense counsel responded that he encountered the same situation in another division, and that the *65 judge had refused to give an Allen charge for that reason. The prosecutor suggested that they just tell the jury that if they could not reach a verdict, a mistrial would have to be declared, with no further explanation. The trial judge said he was going to tell the jury the following:
. . . [i]f you can't reach a verdictenough of you all can't agree, then a mistrial would have to be declared. You have a duty to reach a verdict. This case is very complicated, you've heard a lot of evidence, there are a lot of counts, it's not unusual that you've been out so long, dah, dah, dah, dah. So I'm going to ask that you try to reach a verdict and send them back.
Defense counsel again asked to speak to his client. The prosecutor disagreed with the word "complicated" and said that "serious" would be more appropriate. Defense counsel stated that they would consent to an Allen charge "as the Court would fashion it." At 4:20 p.m., the jury returned to the courtroom, and the trial judge gave them the following charge:
. . . [t]o answer your question: What happens if there's  if you can't agree? What would happen is there's a mistrial, okay. That means that we start from square one  not you all, okay. We start from square one and have to do it all over again. You all, you have a duty to reach a verdict, okay. We were here all day yesterday, everybody's been tired, you heard a lot. It's not  these things are never easy but, you know, I'm not telling you that the world's going to come to end if you don't reach a verdict because as I stated to you, and I want to be clear, it's a mistrial. But you all do have a duty to reach a verdict and let me just suggest to y'all too that if you have, you know  you're not an advocate for one side or the other like I've already told you all. If you're steadfast in your opinion, that's fine, but don't hesitate, as I've explained to you all, to re-examine the others views. If there are more people on one side than the other, you can look at that, scratch  it's okay to scratch your head and say, why are they thinking that way and I'm not thinking that way too. You know, and it's okay to change your views, okay. It's not  I'm not telling you to change your views and you should not change your views just to get out of here but it's okay to re-examine your own views, okay.
Let's go back in and give it another shot and see if we can make any headway, okay. I'm going to give y'all a new verdict form because  for the counts three, four and five.
The jury was escorted out of the courtroom at 4:25 p.m. At 5:10 p.m., the jury returned with a verdict of guilty of armed robbery on Counts 3, 4, and 5.[6] After polling, the trial judge announced that the vote was 10 to 2 on each count.
The Allen charge originated in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), where the United States Supreme Court approved a charge to break a jury deadlock and accomplish jury unanimity. State v. Eugene, 03-1128 (La.App. 5 Cir. 1/27/04), 866 So.2d 985, 991, writ denied, 04-0515 (La.1/14/05), 889 So.2d 263 (citation omitted).
In Allen, the U.S. Supreme Court concluded that it was not error to charge the jury on their return for further instructions, that it was their duty to decide the case, if they could conscientiously do so; *66 that they should listen to each other's arguments with a disposition to be convinced; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one; and that, if a majority was for acquittal, the minority should consider whether they might not reasonably doubt their judgment. Id. at 501-502, 17 S.Ct. 154.
In State v. Nicholson, 315 So.2d 639 (La.1975), the trial court gave the jury a modified Allen charge, and the jury ultimately returned a guilty verdict. The Louisiana Supreme Court disapproved of the use of the charge for several reasons.
First, a portion of the charge emphasized that there must "sooner or later" be a disposition of the case, indicating to the jury that if the case were to end in a mistrial, it would have to be tried again. The Supreme Court stated that the implication of this portion of the charge was misleading and presented a "substantial risk that a juror or jurors possessed of a genuine conviction that reasonable doubt exists would thereby be coerced into agreement with a majority voting to render a guilty verdict." Id. at 641-642.
Second, the trial court's statement that it was unnecessary to add that no juror was requested to surrender his conscientious convictions impermissibly tended to "undermine and weaken general principles governing jury deliberations" and to "render the desirability of reaching a verdict foremost in the jurors' minds." Id.
Third, the trial court admonished the jurors that if a majority favored conviction, the minority should consider whether their doubts were reasonable. Likewise, the trial court instructed that if a majority or a lesser number favored acquittal, the other jurors should ask themselves whether they did not have reason to doubt the correctness of their judgment. The Louisiana Supreme Court found this portion of the charge was untenable because it virtually ensured jury confusion and urged conformity with majority or near majority views. Id. at 642. The Louisiana Supreme Court suggested that the language used by the trial court may have had the effect of coercing the jurors to agree upon a verdict.
In light of the foregoing, the Louisiana Supreme Court banned "the use of the `Allen charge' and of any coercive modification thereof in the courts of Louisiana." Nicholson, 315 So.2d at 641.
Nevertheless, the Louisiana Supreme Court recognized that there would be times when a trial court might wish to give supplemental instructions to a jury unable to agree. It expressed its approval of the guidelines set forth in the American Bar Association Standards Relating to Trial by Jury, and it found that when those instructions should be given was still in the discretion of the trial court subject to the Supreme Court's review upon an allegation that there had been an abuse of that discretion. Id. at 643.
In State v. Campbell, 606 So.2d 38 (La. App. 4 Cir.1992), the appellate court considered a modified Allen charge similar to the one given in the instant case. In Campbell, the trial court instructed the jury that:
. . . if a substantial majority of your number are in agreement as to a verdict which is proper in this matter, the other Jurors [sic] are seriously to ask themselves again and most thoughtfully whether they do not have a reason to doubt the correctness of a judgment which is not shared by several or most of their fellow jurors . . . Remember at all times that no juror is expected to yield a conscientious conviction that he or she may have as to the weight or effect of *67 the evidence. But, remember also, after full deliberations and consideration of the evidence in this case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious conviction.
Campbell, 606 So.2d at 39.
In reviewing the above instruction, the appellate court stated:
By stating that the minority jurors should hold on to their conscientious convictions the court seems to re-enforce the views held by the minority. However, in the same breath the court is instructing the jury that it has a duty to reach a verdict and to consider strongly the position of the majority. Therefore, because those portions of the jury charge are coercive and confusing to the jurors, a conviction which is the direct result of such a charge, as in this case, must be reversed.
Campbell, 606 So.2d at 40.
Likewise, in State v. Diggs, 489 So.2d 1050 (La.App. 1 Cir.1986), the trial court gave the following charge:
. . . [i]t is your duty to decide this case if you can conscientiously. . . . If much the larger number of the jurors are of the opinion  are of one opinion, a dissenting juror should consider whether his or her opinion is reasonable in view of the fact that his or her opinion made no impression upon the minds of equally honest and equally intelligent people. Again, I instruct you that it is your duty to decide this case  in other words, reach a verdict  but only if you can conscientiously do so.
Diggs, 489 So.2d at 1052.
The appellate court found that this charge was a modified Allen charge that contained the very language prohibited in Nicholson and, therefore, that the trial court erred in failing to grant the defendant's Motion for a Mistrial. Id.
In this case, the instruction given by the trial court is a modified Allen charge, which has been prohibited in Louisiana. The trial court implied that it would not accept a mistrial when the trial judge told the jurors twice that they had a duty to reach a verdict. As such, the instruction may have had the effect of coercing the jurors to reach a verdict.
The trial court also attempted to coerce the jury members who held the minority viewpoint to accept the majority position when it stated, "[i]f there are more people on one side than the other, you can look at that, scratch  it's okay to scratch your head and say, why are they thinking that way and I'm not thinking that way too." In Nicholson, supra, the trial court admonished the jurors similarly and the Louisiana Supreme Court found reversible error. In Campbell and Diggs, the appellate courts also reversed based on similar charges.
In addition, in this case, portions of the trial court's instructions were confusing. First, the trial court told the jurors that they had a duty to reach a verdict, and then the judge told them they should not change their views "just to get out of here." Second, the trial judge told the jurors that it was "fine" if they were "steadfast" in their views, then he told them not to hesitate to re-examine the others' views, and then he specifically suggested to the minority that they re-examine their views. Also, the trial judge told the jury that if there were a mistrial, "we start from square one and have to do it all over again," i.e. the case would have to be tried again. This charge was similar to the one which caused reversible error in Nicholson, supra, where the trial judge in that case told the jury that there must "sooner or later" be a disposition of the *68 case. Nicholson, 315 So.2d at 641. In addition, it is irrelevant that the trial judge in this case told the jury at the end of the charge that he was not telling them to change their views, since in Nicholson, supra, the trial court told the jury, "that this Court does not wish any juror to surrender his conscientious convictions," and the Louisiana Supreme Court found reversible error because the amended Allen charge as a whole was found to be coercive. Id. at 641-642. Finally, in this case, the record reflects that the jurors received the final instruction at 4:20 p.m., were escorted out of the courtroom at 4:25 p.m., and returned with guilty verdicts 35 minutes later, at 5:10 p.m. The short period of time suggests that two of the four jury members who had originally voted "not guilty" surrendered their beliefs in order to achieve a verdict.
The State argues in its brief that the defendant's counsel was not ineffective for failing to object to the Allen charge based on the cases of State v. Washington, supra and State v. Jones, supra. However, those cases are distinguishable and, therefore, inapplicable to the instant case. In both Washington and Jones, although the trial courts instructed the jurors that they were expected to reach a "just verdict," they did not instruct the minority jurors to re-examine their positions, as the trial judge did in the instant case.
In this case, the defense counsel's performance was deficient, because he did not object to the Allen charge. While opinions may differ on the advisability of trial decisions made by counsel, since, the Louisiana Supreme Court has previously banned "the use of the `Allen charge' and of any coercive modification in Louisiana courts"[7], the defense counsel was ineffective for failing to object to the use of a modified Allen charge, and, as a result, the defendant was denied a fair trial.
We find, therefore, that the defense counsel erred, in not objecting to the Allen charge, resulting in prejudice that undermined confidence in the outcome of the defendant's trial. See, Strickland, supra. For the foregoing reasons, the defendant's convictions and sentences are reversed.
REVERSED.
NOTES
[1] Ernest Brown, Jr., Theoran F. Brown, and Jeffrey C. Clark were also charged in the same indictment.
[2] State v. Dabney, 03-KH-1418 (La.App. 5 Cir. 12/9/02).
[3] The State noted that it informed the defendant it would file a multiple bill; however, the record does not reflect one was ever filed.
[4] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
[5] The commitment reflects that at 12:33 p.m., the alternate juror was discharged, and the jury retired to deliberate. However, the transcript indicates that the jury began deliberating at 1:32 p.m.; the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
[6] The commitment reflects that the jury returned at 5:05 p.m., but the transcript prevails. Lynch, supra.
[7] Nicholson, 315 So.2d at 641.