# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #031

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of June, 2025** are as follows:

**PER CURIAM:**

**2024-K-00375**    *STATE OF LOUISIANA  VS.  DIONTE BRACKEN (Parish of Iberville)*

REVERSED AND REMANDED. SEE PER CURIAM.

Retired Judge Ford E. Stinson, Jr., appointed Justice ad hoc, sitting for Justice Guidry, recused.

Weimer, C.J., concurs in part, dissents in part and assigns reasons.
Cole, J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2024-K-00375

## STATE OF LOUISIANA

## VS.

## DIONTE BRACKEN

On Writ of Certiorari to the First Circuit Court of Appeal, Parish of Iberville

**PER CURIAM:**[*]

Defendant-respondent was charged by grand jury indictment with one count of second degree murder, in violation of La. R.S. 14:30.1, and one count of attempted second degree murder, in violation of La. R.S. 14:27 and La. R.S. 14:30.1, with both offenses alleged to have occurred on or about August 19, 2020. Following a trial by jury, defendant was found guilty as charged on both counts and was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for second degree murder and a concurrent term of 50 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for attempted second degree murder. On appeal, the first circuit reversed defendant's convictions and sentences and remanded for a new trial, reviewing the merits of defendant's assigned errors of an improper *Allen* charge absent contemporaneous objection and finding reversible error based on the trial judge's coercive jury charge. *State v. Bracken*, 2023-0782 (La. App. 1 Cir. 2/23/24) (unpub'd, available at 2024 WL 747571) (Chutz, J., dissenting).

We granted the state's writ application to consider whether the majority of the first circuit erred in determining the trial court provided an improper *Allen* charge to

---

[*] Retired Judge Ford E. Stinson, Jr. appointed Justice ad hoc, sitting for Justice Guidry, who is recused.

the jury, reversing defendant's convictions and sentences. We find that the first circuit erred as this charge was not coercive.

In this case, the jurors retired to deliberate at 7:22 p.m. Forty minutes later, at 8:08 p.m., the jury submitted its first question, asking for clarification concerning hung juries. The jury was then brought back into the courtroom. The court replied:

> A hung jury, in Louisiana, it requires a unanimous verdict. So all 12 of you would have to vote either guilty or not guilty. If there's a hung jury, that means that we have to come back to try this case again before another jury.

The following exchange then took place between the jury foreman and the trial court:

**FOREMAN:** I think that we had some very technical questions regarding definitions of things, like when we asked: What is a hung jury? Does that mean we have decided not to agree? How many people have to disagree, how long does it have to take for us to disagree? That was one component of: What is a hung jury[?]

The second component of that question was: Then what are the implications regarding … the defendant and his custody? Where -- what happens to him? What does he get to do if that is a decision made by the jury? Does that cover –

**COURT:** Okay. And, again, in order to reach a verdict in this case, all 12 of you have to agree. So it has to be all 12 of you would have to agree either to the original charge, to one of the responsive verdicts to the original charge, or not guilty. It takes all 12 votes.

And if you don't or cannot agree to a unanimous verdict, then we'll have to try this case again, and we'll have to bring in a whole other jury in order to do that. You all would be discharged from further jury service on this particular case.

How long does it take you to make that decision? I know you hadn't been back there that long yet. I don't want to put you all in a position where you feel like you have to stay in there all night in order to do that because you don't. I don't know if it would help if maybe you all got to go home this evening and then come back in the morning to try and do your deliberations. But I would say, you know, to a point where you've discussed the case among yourselves and then, after discussing the case, each juror being able to express their opinion and reasons why they have that opinion, if after that, the majority can't change the minorities' opinion or decision, then I would say you all have a hung jury and you can just report that back to the court.

**FOREMAN:** Your honor, would it be without reason for us to have a conversation, if we wish, to go home and cool off or continue to

discuss privately as opposed to in front –

The trial court then held a bench discussion with counsel, concerning the requirement of sequestration since the jury had begun deliberations. The trial court then informed the jury that if a verdict could not be reached that evening, sequestration would be necessary until the next day in order for the jury to make a decision. There was then discussion with Juror No. 57 concerning her inability to be sequestered due to her special needs child.

The jury then exited the courtroom, and at 8:27 p.m. the jury resumed deliberations. Approximately two hours later, the jury submitted another pertinent question: "[I]f they had the one vote – had a vote of one juror, could she go home?" The state then requested that the jury be brought back in and be *Allen* charged, but the court stated that the *Allen* charge is banned. So, the court brought the jury back into the courtroom to recharge them, instructing the jury in pertinent part:

**COURT:** Ladies and gentlemen, I basically wanted to reiterate to you what your duty is as jurors in this case. And I do believe at the time … even though I advised that the normal hours of court would be 9:00 to 5:00, I also stated that once the case was given to the jury, that we would remain here until a verdict was rendered. So I know that it's late. I know that y'all have been here for some time, but I think you need to recognize the importance of this matter, not only to the State as well as to the defendant, but also to this community and the parish of Iberville to do your job.

And, again, you're not advocates for either side. Your duty is to listen to the evidence and, as best as you can[,] to try and reach a verdict after discussing the case among yourselves with each other, and if you're convinced that your decision may not be correct after listening to other jurors, don't hesitate to change your opinion; but if you're convinced that you're right, then maintain that opinion. And if you can't reach a verdict, it's perfectly fine if you come back and tell me, "We can't reach a verdict," but we need to stay here until we know one way or another, either that you have a verdict or you don't have a verdict. So I can't let anyone leave. This has to be done by all twelve jurors. Until you all can reach a decision or you decide you can't reach a decision, you have to continue to hopefully try and reach some type of decision in this case. So we'll excuse you all again and just let us know when you're ready.

No objections to these instructions were made. At 10:47 p.m., deliberations resumed, and at 11:25 p.m., the jury returned with a unanimous verdict of guilty as charged on both counts.

The *Allen* charge stems from the United States Supreme Court decision in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In *Allen*, the Supreme Court approved of a charge designed to break a jury deadlock and achieve jury unanimity. *Allen*, 164 U.S. at 501, 17 S.Ct. at 157. The focus of the *Allen* charge was that the jury minority, regardless of whether they were for conviction or acquittal, should reconsider the reasonableness of its opinion because it was not shared by a majority of the jury. *Id.* For decades thereafter, most state and federal courts had accepted its use or modified use. *See State v. Nicholson*, 315 So.2d 639, 641 (La. 1975).

Almost 80 years after the U.S. Supreme Court approved *Allen* charges, this Court issued the split 4-3 decision in *State v. Nicholson*, 315 So.2d 639 (La. 1975), holding the use of the modified *Allen* charge to break jury deadlock was impermissible. In this case, the majority of the first circuit panel found that the trial court's charge was improper, relying upon *Nicholson*. *Bracken*, 2023-0782, p. 19, 2024 WL 747571 at *9. The court found the supplemental instructions implied that the jury would be forced to continue deliberations until a unanimous verdict was achieved, and the court could not say that these instructions did not pressure the jurors in the minority to conform to the majority's view. *Id.*

We disagree. Echoing the argument of Judge Chutz in his dissenting opinion below, in its totality, the language used by the trial court in its supplemental instructions did not have a coercive effect on the jurors with a minority viewpoint. The court expressly indicated its willingness to accept a hung jury, which would result in a mistrial, and the trial judge did not inform the jurors holding the minority view to rethink their positions in light of the majority's stance in order to a reach a

4

verdict. Instead, the trial judge instructed the jurors to consult with one another and consider each other's views. Accordingly, the supplemental jury instructions were not so fundamentally unfair to deprive defendant of due process.

We go one step further. *Allen* charges do not violate a defendant's due process rights as they have been continually constitutionally upheld by the United States Supreme Court. *See Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S.Ct. 546, 551, 98 L.Ed.2d 568 (1988) ("The continuing validity of this Court's observations in *Allen* are beyond dispute.); *see also Jones v. United States*, 527 U.S. 373, 382 & n.5, 119 S.Ct. 2090, 2099 & n.5, 144 L.Ed.2d 370 (1999). In addition, the vast majority of states and federal circuits accept the use of either traditional *Allen* or modified *Allen* charges. *See* Caleb Epperson, *The Future of the Allen Charge in the New Millenium*, 75 ARK. L. REV. 109, 153–60 (2022). Louisiana remains a serious outlier and is currently one of only five states with a total ban. *See id.* Even in *Nicholson*, we recognized there will be times when a court may wish to give supplemental instructions after the jury has retired, and this determination of when to give supplemental instructions is within the discretion of the trial court. *Nicholson*, 315 So.2d at 643; *see State v. Lowenfield*, 495 So.2d 1245 (La. 1985) (There is no requirement that a trial judge declare a mistrial at the initial sign of trouble); *State v. Governor*, 331 So.2d 443 (La. 1976) (It is within the discretion of the court to urge jurors to come to an agreement). La.C.Cr.P. art. 808 also expressly provides for giving of further charges after the jury has begun its deliberations.

Even before *Nicholson,* this Court recognized that a trial judge may not issue coercive instructions. *See e.g., State v. Rodman*, 208 La. 523, 23 So.2d 204 (1945). This comports with the decisions of the United States Supreme Court, applying the United States Constitution, followed by 45 other states, that there is an imbedded restriction that any type of *Allen* charge cannot be expressly coercive or promote conviction. The confusion in the lower courts shows us that an outright ban of *Allen*

charges is no longer the proper solution. Allowing the use of the modern modified *Allen* charge would give Louisiana courts the benefit of encouraging deliberation and efficient judicial resolution. We therefore abrogate *Nicholson*.

In light of our holding, we look to the U.S. Fifth Circuit Court of Appeals model of a modified *Allen* charge. *See Pattern Jury Instructions (Criminal Cases)*, Fifth Circuit, 2019 Edition, Section 1.53 (the "Modified Allen Charge"). This pattern charge is required to be used in federal prosecutions occurring in Louisiana, and we find it to be a modern approach to this issue that reached the appropriate balance. In its *Allen*-charge analysis, the U.S. Fifth Circuit instructs that the relevant inquiry is a two-pronged approach of whether: "(1) any semantic deviation from approved *Allen*-charge language was so prejudicial that it requires reversal and (2) the [totality of the] circumstances surrounding the use of the charge were coercive." *United States v. Andaverde-Tinoco*, 741 F.3d 509, 515, 515 (5th Cir. 2013) (citing *United States v. Winters*, 105 F.3d 200, 203 (5th Cir. 1997)).[1] In evaluating an *Allen* charge's coercive effect, the U.S. Fifth Circuit considers the "totality of the circumstances." *Andaverde-Tinoco*, 741 F.3d 509 at 517 (quoting *United States v. Lindell*, 881 F.2d 1313, 132 (5th Cir. 1989)). We agree with this approach, and a charge substantially similar to that Modified Allen Charge will be acceptable for use in our state courts. The proper analysis is whether any charge given was coercive under the totality of the circumstances.

In the present case, we do not find the supplemental instructions given by the trial judge to be coercive, and the court of appeal erred in reversing defendant's

---

[1] The U.S. Fifth Circuit reviews the use of an *Allen* charge for abuse of discretion. *United States v. Winters*, 105 F.3d 200, 203 (5th Cir. 1997)). When a defendant does not object to its use, the U.S. Fifth Circuit reviews the use of an *Allen* charge for plain error. *United States v. Hitt*, 473 F.3d 146, 153 (5th Cir. 2006).

convictions and sentences. Therefore, the ruling of the court of appeal is reversed. We remand this case to the court of appeal for consideration of the remaining assignment of error pretermitted on original appeal.

**REVERSED AND REMANDED**

# SUPREME COURT OF LOUISIANA

## No. 2024-K-00375

## STATE OF LOUISIANA

## VERSUS

## DIONTE BRACKEN

*On Writ of Certiorari to the Court of Appeal, First Circuit,*
*Parish of Iberville*

**WEIMER, C.J.**, concurring in part, dissenting in part.

I agree with the majority's analysis and decision that the charges provided by the trial judge did not violate the defendant's due process rights and also with the abrogation of **State v. Nicholson**, 315 So.2d 639 (La. 1975).

I write further to note that as the court of appeal recognized, defendant failed to contemporaneously object to the additional instructions given to the jury after the jury had retired upon the foreman's request. The failure to contemporaneously object precludes appellate review. See **State v. Walker**, 577 So.2d 770, 775 (La.App. 2 Cir. 1991) (citing **State v. Mack**, 403 So.2d 8 (La. 1981); see also La. C.Cr.P. art. 841 (governing when an objection is required). Contrary to the court of appeal's decision in the instant case,[1] the other state appellate courts have found that, unlike erroneous instructions with respect to the elements of the offense as in **State v. Williamson**, 389 So.2d 1328 (La.1980), an error in an **Allen** charge does not qualify as an exception to the contemporaneous objection rule with respect to a jury charge. See **State v. Cotton**, 23-0492, pp. 10-12 (La.App. 5 Cir. 7/31/24), 392 So.3d 1147, 1154-55

---

[1] **State v. Bracken**, 23-0782, p. 11 (La.App. 1 Cir. 2/23/24) (unpub'd, available at 2024 WL 747571 at *5 (held that the **Allen** charge spoke directly to the "requirements of due process and the alleged violation of a fundamental right" and was, thus, reviewable on appeal even in the absence of a contemporaneous objection).

(defense counsel did not object to the alleged, prohibited **Allen** charge and actually consented to it, thus, the alleged error was not preserved for review); **State v. Williams**, 22-0594, pp. 13-15 (La.App. 4 Cir. 5/8/23), 367 So.3d 785, 794-95 (the record did not contain an objection from defense counsel as to the trial judge's alleged **Allen** charge, although defense counsel raised it later in a motion for new trial, issue was not adequately preserved for review); **State v. Rivera**, 22-365, pp. 3-4 (La.App. 3 Cir. 11/9/22) (unpub'd, available at 2022 WL 16831969 at *2-3), writ denied, 22-01707 (La. 3/14/23), 357 So.3d 825 (citing to La. C.Cr.P. art. 801(C), the court found that the defendant did not contemporaneously object to the trial court's supplemental instructions to the jury, but acquiesced to them; thus, the issue was not preserved for appellate review); **State v. Eugene**, 03-1128, pp. 7-9 (La.App. 5 Cir. 1/27/04), 866 So.2d 985, 990-91 (the defendant is not entitled to raise the issue of a prohibited **Allen** charge after jurors declared they were deadlocked when the defendant did not preserve it for appeal by making a contemporaneous objection, La. C.Cr.P. art. 841); **State v. Caston**, 561 So.2d 941, 943 (La.App. 2 Cir. 1990) (the **Allen** charge issue was not preserved for review based on the "fail[ure] to object at the time of the instruction or prior to the jury's returning of a verdict."). Accordingly, the lack of a contemporaneous objection by defendant is problematic and would serve as another ground for reversing the court of appeal's decision. Therefore, I concur in part with the majority's opinion and with the decision to reverse and remand.

Additionally, I disagree with the majority's implication, based on federal jurisprudence, that an **Allen** charge is potentially reviewable on appeal even if the defendant does not timely object to the trial court's decision to give an **Allen** charge. See **State v. Bracken**, 24-00375 (La. 6/  /25), slip op. p. 6 n.1. For this reason, I respectfully dissent in part from the majority opinion.

2

# SUPREME COURT OF LOUISIANA

## No. 2024-K-00375

## STATE OF LOUISIANA

## VS.

## DIONTE BRACKEN

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of Iberville

**COLE, J., additionally concurs and assigns reasons:**

I entirely support the Court's Per Curiam opinion and write separately only to commend this correction of the error made by the Court in *State v. Nicholson,* 315 So. 2d 639 (La. 1975). *Nicholson* was untethered to any constitutional principle or constraint. It recognized that the '*Allen* charge' was approved under the federal constitution, but divined that it was prohibited in Louisiana without discussing our state constitution or citing to a single provision of law.

The *Nicholson* Court's analysis was based on "scholarly disapproval" and its own foreshadowing of a trend in a "growing number" of other states at that time. That trend never materialized -- leaving Louisiana in a stark minority of only four other states. This Court's approach fifty years ago has long caused confusion and was a rank exercise of judicial power -- *ipse dixit*. I am pleased today's ruling is based on sound legal principles and constitutional jurisprudence.