SUSAN M. CHEHARDY, Chief Judge.
|2On appeal, defendant challenges the trial court’s denial of his motion to withdraw his guilty plea to distribution of cocaine, a violation of La. R.S. 40:967(A). For the following reasons, we affirm.

Procedural history

On March 2, 1999, the Jefferson Parish District Attorney filed a bill of information charging defendant, Tori L. Jones, with distribution of cocaine on March 17, 1998, in violation of La. R.S. 40:967(A). Defendant was arraigned and pled not guilty on March 10, 1999. Defendant filed various pre-trial motions, including a motion to suppress identification. On July 21, 1999, the trial court heard and denied defendant’s motion to suppress identification.
On August 16, 1999, defendant withdrew his not guilty plea and tendered a plea of guilty to distribution of cocaine. Pursuant to the plea agreement, on August 17, 1999, the State filed a multiple offender bill of information, alleging defendant was a sec *761 ond felony offender, having previously been convicted of possession with intent to distribute marijuana on April 8,1997.
IsOn October 6, 1999, defendant filed a pro se Motion to Withdraw Guilty Plea, which was heard and denied by the trial court on October 19, 1999. Immediately thereafter, the trial court sentenced defendant to 15 years imprisonment at hard labor to run concurrent with the parole revocation defendant was serving, and concurrent to the sentence imposed in case number 98-6561.[1] On October 26, 1999, defendant filed a Motion for Appeal. After substantial delays, defendant’s appeal was granted on November 26, 2012.[2]

Facts

Defendant’s conviction resulted from a guilty plea so the circumstances surrounding the charged offense were gleaned from the record, including testimony presented at defendant’s suppression hearing. Here, the bill of information alleges that on March 17, 1998, defendant violated La. R.S. 40:967(A)[3] in that he did knowingly or intentionally distribute a controlled dangerous substance, to wit: cocaine. Further, at the suppression hearing, the State introduced testimony from Jefferson Parish Sheriffs officers that defendant sold four rocks of crack cocaine to an undercover officer on March 17,1998.

¡¿aw and argument

On appeal, defendant raises two assignments of error: first, defendant argues that the trial judge erred in denying his motion to withdraw his guilty pleas; and, second, Mr. Jones was denied the effective assistance of counsel.
In his first assignment of error, defendant argues that the record as a whole fails to show that he made a knowing and intelligent waiver of his constitutional rights when he entered his guilty plea. Specifically, defendant contends that prior to the acceptance of his guilty plea, the trial court failed to advise him of his constitutional right to remain silent.
The State responds that, while the guilty plea colloquy does not address defendant’s privilege against self-incrimination, the waiver of rights form contains a waiver of that privilege, which was signed by defendant, his attorney, and the trial judge. Thus, the State maintains that there is a sufficient affirmative showing in the record *762 that defendant was advised of his privilege against self-incrimination, and knowingly, intelligently, and voluntarily waived that right.
A guilty plea will not be considered valid unless the plea was a free and voluntary choice on the part of the defendant. State v. Nuccio, 454 So.2d 93 (La.1984). Under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the decision to plead guilty will not be considered free and voluntary unless, at the very least, the defendant was advised of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers. The waiver of those rights must be on the record, unequivocal, express and knowing, and free and voluntary. State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971); State v. Nuccio, supra.
While it is preferable for the trial judge to conduct a colloquy with the defendant to ascertain the validity of the plea, such a colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea. State v. Halsell, 403 So.2d 688, 690 (La.1981). In State v. Strain, 585 So.2d 540, 543 (La.1991), the Louisiana Supreme Court emphasized that the determination of a valid waiver of counsel during a guilty plea depends on the entire record and not just on certain “magic” words used by the trial judge.
In State v. Hinson, 01-1548 (La.9/14/01), 797 So.2d 32, 32-33 (per curiam), the Louisiana Supreme Court found that the defendant knowingly and intelligently waived his right to counsel before pleading guilty based on the totality of the circumstances. The court, citing Strain, supra, reiterated that whether a plea is knowing and voluntary is determined by the entire record and not just by certain magic words used by the trial judge. See also, State v. Vicknair, 09-612 (La.App. 5 Cir. 1/26/10), 32 So.3d 238, 243.
Further, a written form containing a waiver of rights is a part of the record, and can be examined to determine the free and knowing nature of the plea. State v. Dunn, 390 So.2d 525 (La.1980). In Dunn, the Louisiana Supreme Court noted that, during the guilty plea colloquy, the trial judge failed to specifically refer to the defendant’s privilege against self-incrimination. The supreme court opined that, although a “direct, three-right colloquy between the trial judge and defendant is preferable and ... encouraged,” a written waiver-of-rights form may be considered in determining whether the defendant was adequately “informed” of his rights. Dunn, 390 So.2d at 527. Finally, the Dunn court considered the waiver-of-rights form that was initialed and signed by the defendant a “sufficient affirmative showing in the record of an express and knowing waiver of defendant’s privilege against self-incrimination.” Dunn, 390 So.2d at 527. This Court held similarly in State v. Hebert, 02-884 (La.App. 5 Cir. 12/30/02), 838 So.2d 30, 31-34 (transcript of the plea colloquy and the well-executed waiver-of-rights form constituted | (¡sufficient affirmative showing on the record that the defendant knowingly waived his privilege against self-incrimination without specific advisal of right against self-incrimination from trial judge) and State v. Cole, 04-615 (La.App. 5 Cir. 3/1/05), 900 So.2d 15, 23-24 (explanation by defense counsel and a well-executed waiver-of-rights form were sufficient to support a knowing and voluntary guilty plea even without specific advisal of the right against self-incrimination from trial judge).
In the instant case, on August 16, 1999, defendant withdrew his plea of not guilty and entered a plea of guilty to distribution *763 of cocaine. During the Boykin[4] colloquy, defendant informed the trial judge that he was 22 years old and had attended two years of college. The trial judge explained that defendant was being charged with distribution of cocaine, and that the maximum sentence defendant could receive would be 30 years at hard labor.
During the colloquy, the trial judge told defendant that no one could force him to plead guilty and confirmed that no one had used any force, intimidation, coercion, or promises of rewards to induce him to plead guilty. The trial judge further advised defendant that he had the right to hire an attorney of his choice, or, if he could not afford an attorney, to have an attorney appointed at no cost to him. The trial judge informed defendant that he had a right to trial by jury or, if he chose, by a judge; the right to confront his accusers; and the right to compel testimony from his witnesses.
Next, the trial judge told defendant that, if the court accepted his plea, defendant could not assert any allegation or defects such as an illegal arrest, an illegal search and seizure, an illegal confession, or an illegal line-up. Defendant |Talso indicated that he understood that, by pleading guilty, he was admitting that he did, in fact, commit the charged offense.
The trial judge asked defendant whether his attorney had advised him that, if his plea was accepted, his sentence would be 15 years at hard labor. Defendant indicated that he understood the offered agreement. The trial judge also informed defendant that this conviction could be used to enhance a sentence in the event of a subsequent conviction. Defendant indicated that he understood these rights and the fact that he was giving up these rights if he plead guilty. Following the colloquy, the trial judge accepted defendant’s plea, finding that defendant had made a knowing, intelligent waiver of his rights, and that his guilty plea was knowing, intelligent, free and voluntary.
Further, the transcript of the guilty plea proceedings reflects that, prior to the colloquy, defendant’s attorney advised the trial judge that he had completed the appropriate waiver-of-rights, or Boykin, form with defendant. The first paragraph of that Boykin form, which was introduced into the record, reads:
Your attorney has indicated to me that he/she advised you of your rights (1) to a trial by jury or by the Court alone, (2) to confront your accusers, and (3) of your right against self-incrimination, and that by entering a plea of guilty you are waiving or giving up these rights. He/she has also indicated to me that you have advised him/her that you understand these things. Is that correct?
Although defendant did not initial that introductory paragraph, he did initial the remaining questions on the form.[5] Furthermore, defendant struck through language in the paragraph immediately above his signature to specify that he was not *764 waiving the statutory delay between his guilty plea and sentencing as noted:
|SI, as the defendant in this case, acknowledge that the foregoing has been read to me, that my attorney and the trial judge have explained the nature of the crime to which I am pleading guilty, all of my rights to me, and what rights I am waiving or giving up, as listed above, and that I have been given every opportunity by the trial judge to ask questions in open court about anything I do not understand and about all of the consequences regarding my plea of guilty. I am completely satisfied with the explanations of my attorney and the judge.
I, further acknowledge that my act of pleading guilty is a knowing, intelligent, free and voluntary act on my part. I know that no one can force me to plead guilty. I know that by pleading guilty I admit I committed the said crime. I know this plea of guilty is more than a confession. It is also a conviction. Nothing remains except for the judge to give judgment and give me my punishment. I waive all delays for sentencing and acknowledge I ana-ready for sen-tencingv (Emphasis in original).
The waiver of constitutional rights form was signed by defendant and his attorney, then signed and dated by the trial judge.
Upon review, we find that, although the trial judge did not specifically advise defendant of his right against self-incrimination, defendant’s plea colloquy along with the well-executed waiver-of-rights form constitutes a sufficient affirmative showing on the record that defendant knowingly waived his privilege against self-incrimination. Dunn, supra. Based on the foregoing, we find no error in the trial judge’s denial of defendant’s motion to withdraw his guilty plea. This assignment lacks merit.
In his second assignment of error, defendant argues that he was denied effective assistance of counsel. Specifically, he contends that he was confused about whether his guilty plea included a stipulation to the multiple offender bill as a second felony offender, and that his attorney and the district attorney misled and/or pressured him into pleading guilty by conveying to him that if he did not plead guilty, the State would seek a life sentence by proving that defendant was a third felony offender. He further contends that the State indicated that one of the jcjOffenses that would be used to enhance his penalty was his juvenile adjudication for armed robbery from 1991, which he later learned could not be used to enhance his sentence. Thus, defendant maintains that his attorney should have advised him that the State’s threats of a life sentence were unfounded as they were not permissible under the law. Finally, defendant asserts that his counsel was ineffective for failing to file a timely motion for appeal on his behalf.
In response, the State argues that despite defendant’s contention that he pled guilty because he believed he faced a possible life sentence, nothing in the record supports defendant’s assertion that his counsel misled him as to the status of the law. The State asserts that defendant entered into a favorable plea agreement and has failed to show that his counsel’s performance was deficient or that he was prejudiced. The State maintains that at the close of the sentencing proceeding, defense counsel ensured that defendant understood the appeal and post-conviction prescriptive period and that his trial attorney, Indigent Defender Board (I.D.B.), would not handle his appeal. Finally, the State submits that the record demonstrates that defense counsel vigorously represented defendant throughout the proceedings and that defendant received a *765 favorable plea agreement as a result. Accordingly, the State notes that defendant’s ineffective assistance of counsel claims do not meet either the first or second prongs of the Strickland test.
Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. McDonald, 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Dabney, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 63.
ImUnder the Strickland test, the defendant must show: (1) that counsel’s performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. State v. Dabney, 05-53, 908 So.2d at 63 (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). This requires showing that counsel’s errors were so serious as to deprive the defendant of a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” Id. There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel’s perspective at the time. State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078-79, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight. Id.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed |uin the interest of judicial economy. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1248, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001).
In this case, the record contains sufficient evidence to rule on the merits of defendant’s ineffective assistance of counsel claims. The record does not support defendant’s assertion that he was misled and/or pressured into pleading guilty in order to avoid a life sentence. Specifically, at the hearing on his motion to withdraw guilty plea, defendant argued that he pled guilty because he was told that he would face a possible life sentence if he did not.
Defendant testified that he later learned that his four prior convictions for armed robbery entered on October 2, 1991 could not be used as predicate convictions be *766 cause they were juvenile adjudications.[6] Defendant stated that his attorney and the district attorney had misled him regarding the possibility of being adjudicated a third felony offender and sentenced to life imprisonment.
In response to defendant’s allegations, the prosecutor replied:
The defendant has accused all of us of threatening him with life imprisonment. I am not cavalier when I say this, but it was not a threat, it was a promise. I do not think I communicated that directly with Mr. Jones. It is not my usual practice. I never talk to defendants. I probably told that to Mr. Fleming—
[[Image here]]
—and the basis of it was that [defendant’s] rap sheet shows that on October 2nd, 1991, defendant was convicted of four counts of armed robbery. Those counts along with the distribution of marijuana which the multiple bill is based on and a conviction of this offense would allow the State to multiple bill him as a three time offender; three strikes and you’re out life sentence. Again, it was not a threat. It was an acknowledgement to defense counsel if he did not plea, that’s what the State intended to do.
Defense counsel further responded regarding his advisal with respect to this issue:
|12I did not indicate to Mr. Jones that he would receive life. I had indicated that the prosecutor would try to give him a life sentence. I told Mr. Jones that the first conviction, the armed robberies — well, actually it’s a juvenile adjudication which occurred prior to the change in the multiple offender law which now allows you to use some certain juvenile adjudications — I had had indicated to him it was my belief that they could not do that, that the court was inclined, however, to agree with the district attorney, and he might have a hard time on appeal with that issue. That it could — if the prosecutor’s position is right, he would face a mandatory life sentence.
I further communicated to Mr. Jones that even if we are right and he would still in fact be a second multiple offender, fifteen years would be the minimum sentence on that case, and he could certainly receive up to at least sixty years on the distribution and I guess twenty years on the carnal knowledge as a second offender, and it was certainly in his best interest.
Thus, the record in this case indicates that neither the prosecutor nor defense counsel misled the defendant as to the status of the law in effect at the time.[7]
As to this issue, defendant has failed to show that his counsel’s performance was deficient, and that he was prejudiced as a result. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Dabney, 05-53, 908 So.2d at 63. Accordingly, defendant has failed to *767 establish the first criteria to prove ineffective assistance under Strickland.
Moreover, despite defendant’s contention that his attorney was inadequately representing him, the record reflects otherwise. Defense counsel advised the trial court that he hired a private investigator to work with him and thoroughly investigated this matter. Defense counsel filed various omnibus pre-trial motions including a Motion for a Preliminary Examination, Motion to Suppress the Evidence, Confession, Statement, and/or Identification, Motion for Pre-Trial Disclosure of Evidence of Independent and Separate Offense, Wrongs, or Acts, Motion for Criminal Records and Pending Charges of all State Witnesses, and a | ^Motion for Reduction of Bond. Further, at the hearing on defendant’s Motion to Suppress Statement, defense counsel questioned various witnesses, reviewed all information given to him by defendant, and presented arguments in support of the motion.
Moreover, defendant received the benefit of a favorable plea agreement. At the time of the offense, the sentencing exposure for the instant distribution of cocaine offense was a minimum of five years without benefit of parole, probation, or suspension of sentence and a maximum of thirty years at hard labor, and a possible $50,000.00 fine. See, La. R.S. 40:967. Further, as part of the same plea bargain, defendant tendered a plea to carnal knowledge of a juvenile, which exposed defendant to a maximum of ten years at hard labor. See, La. R.S. 14:80. Thus, defendant faced a possible maximum term of imprisonment of 40 years, if the sentences were imposed consecutively.
Instead, pursuant to defendant’s plea agreement, he was sentenced to 15 years for the distribution of cocaine offense and four years for the carnal knowledge of a juvenile offense, to be served concurrently. The State also dismissed a pending charge for distribution of a controlled dangerous substance within one thousand feet of a school. Further, the State filed a habitual offender bill alleging that defendant was a second felony offender, which carried potential enhancement of his penalty for distribution of cocaine to up to 60 years imprisonment at hard labor.[8] The record does not reflect that the State pursued proving defendant’s multiple offender status or sentencing enhancement. In sum, defendant received a very favorable result from his negotiated plea agreement.
Upon review, we find that defendant has failed to show that his counsel’s performance was deficient, and that he was prejudiced as a result. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Dabney, 05-58, 908 So.2d at 68. Accordingly, defendant has failed to establish the first *768 criteria to prove ineffective assistance under Strickland.
Lastly, defendant argues that he was denied effective assistance of counsel when his attorney failed to file a timely motion for appeal on his behalf. He argues that he was prejudiced by his counsel’s omission because the trial court originally dismissed his pro se motion for appeal as untimely, which took twelve years to rectify.
Although, it is true that the trial court incorrectly denied defendant’s pro se motion for appeal as untimely, that ruling is not attributable to defense counsel. Moreover, any error in this regard was corrected by defendant when he filed a timely pro se motion for appeal and by the trial court when it granted defendant’s out-of-time appeal. See, State v. Wood, 34,819 (La.App. 2 Cir. 8/22/01), 793 So.2d 441, 452 (citing State v. James, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461). Finally, the claim is rendered moot because the defendant is now before the court on appeal. Id.
In light of the foregoing, we find that defendant has failed to establish deficiency or prejudice as required under Strickland. This assignment of error lacks merit.

11SErrors patent

As is our routine practice, the record was reviewed for errors patent, according to La.C.Cr.P. art. 920. Our review reveals that defendant was not given a complete advisal regarding the time period for seeking post-conviction relief provided in La. C.Cr.P. art. 930.8.[9] Specifically, the transcript indicates that the trial judge advised the defendant that he has “two years from today’s date to seek post-conviction relief.” By this opinion, this Court can correct said error by informing the defendant of the applicable prescriptive period for post-conviction relief.[10] Accordingly, defendant is notified that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C.Cr.P. arts. 914 or 922. In all other aspects, defendant’s conviction and sentence are affirmed.

AFFIRMED

. On October 19, 1999, defendant also pled guilty to carnal knowledge of a juvenile, in violation of La. R.S. 14:80, in case number 98-6561. In that case, the trial judge, in accord with the plea agreement sentenced defendant to four years at hard labor to run concurrent to the sentence in the instant case, and a parole revocation defendant was serving. Further, defendant has also appealed his conviction, in case number 98-6561, which is currently before this Court in docket number 13-KA-98.

. On October 26, 1999, defendant filed a motion for appeal. On or about July 25, 2000, relator sought mandamus relief requesting that this Court order the trial judge to rule on defendant’s pro se motion for appeal. On August 11, 2000, this Court ordered the trial judge to rule on defendant's motion. State ex rel. Jones v. Green, 00-1343 (La.App. 5 Cir. 8/11/00) (unpublished writ disposition). On August 29, 2000, the trial judge denied defendant’s motion for appeal as untimely. After 12 years, defendant again sought relief with this Court, which instructed the trial court to reconsider defendant’s motion for appeal. Jones v. State, 12-379 (La.App. 5 Cir. 6/1/12) (unpublished writ disposition). On November 26, 2012, the trial court granted defendant’s Motion for Appeal.

.On the date of the offense, La. R.S. 40:967(A) read: "Except as authorized by this Part 1 or by Part VII-B of Chapter 5 of Title 402 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:(l) To ... distribute, or ... possess with intent to ... distribute ..., a controlled dangerous substance or controlled substance analogue classified in Schedule II...."

. 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. "There has never been a requirement that a defendant initial each line in a plea form.” State v. Woods, 09-399 (La.App. 5 Cir. 3/9/10), 38 So.3d 391, 405, writ denied, 10-0784 (La.10/29/10), 48 So.3d 1096. See also, State v. Nelson, 10-760 (La.App. 5 Cir. 3/29/11), 63 So.3d 280, 283-284 (even though the well-executed waiver of constitutional rights form did not contain the defendant’s initials, the plea colloquy and waiver form constituted a sufficient affirmative showing on the record that the defendant was advised of her rights, that she understood them, and that she made a knowing and intelligent waiver of them).

. At the hearing on defendant's motion to withdraw his guilty plea, the State asserted that defendant's rap sheet showed that defendant was convicted of four counts of armed robbery on October 2, 1991. Defendant, who was born on December 28, 1976, was fourteen years old on the date of those convictions.

. Although the Louisiana Supreme Court in State v. Brown, 03-2788 (La.7/06/04), 879 So.2d 1276, writ denied, 543 U.S. 826, 125 S.Ct. 158, 160 L.Ed.2d 40 (2004), later struck down the provision in the Habitual Offender law that allowed prior juvenile adjudications rendered without the right to a jury trial to be used as predicate offenses, the provision was in effect at the time of defendant’s guilty plea in 1999 and, thus, advice that the adjudications could be used as predicates was not misleading. See also, State v. Lemon, 05-567 (La.App. 5 Cir. 2/14/06), 923 So.2d 794.

. At the time of the instant offense, La. R.S. 15:529.1 provided, in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;

. Defendant committed the instant offense on September 15, 1998. He was sentenced on October 19, 1999. La.C.Cr.P. art. 930.8 was amended to shorten the prescriptive period from three years to two years, effective August 15, 1999. This amendment has been held to be retroactive. State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062.

. See, State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, writ denied, 11-1753, (La.2/10/12), 80 So.3d 468; State v. Thomas, 10-220 (La.App. 5 Cir. 11/9/10), 54 So.3d 688, writs denied, 10-2758 (La.4/25/11), 62 So.3d 89 and 10-2752 (La.5/20/11), 6 So.3d 974; State v. Neely, 08-707 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-0248 (La.10/30/09), 21 So.3d 272; State v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473; State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 767, 768, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120.