HANS J. LILJEBERG, Judge.
[ ^Defendant appeals his convictions and sentences for two counts of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance and one count of possession of methamphetamine. For the following reasons, we affirm defendant’s convictions and sentences, and we grant appellate counsel’s motion to withdraw as counsel of record.

PROCEDURAL HISTORY

Defendant, Jefferson Faggard,[1] was charged with two counts of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance, in violation of La. R.S. 40:983, occurring on or about October 9, 2013 (count one) and November 8, 2012 (count two). He was also charged with one count of possession of methamphetamine, in violation of La. R.S. 40:967(C), occurring on February 6, 2014. He pled not guilty to all charges.
Trial commenced on March 3, 2015. After the State rested its case on March 5, 2015, defendant withdrew his not guilty *841 pleas and pleaded guilty to all three counts. Defendant was sentenced to 15 years imprisonment at hard labor on Rcounts one and two, and five years imprisonment at hard labor on count three, with all three sentences to run concurrently-
On that same date, the State filed a multiple offender bill of information alleging that defendant was a third felony offender. After defendant stipulated to being a third felony offender, the trial court vacated his sentence on count two and resentenced him as a multiple offender to 15 years imprisonment at hard labor, to run concurrently with his sentences in counts one and three, and with his sentences in case numbers 14-0947 and 14-317.
Thereafter, defendant filed pro se motions to appeal, in which he also requested to withdraw his -guilty pleas and to have his habitual offender stipulation and sentence vacated. The trial court granted defendant’s motion to appeal, but denied his motion to withdraw his guilty pleas.

FACTS

Although defendant pled guilty to two counts of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance and one count of possession of methamphetamine, he did not enter his guilty pleas until after the State rested its case at trial. During the guilty plea colloquy, the State provided that it “would rely on the Record of the trial up to this point with the sworn testimony of all its witnesses as a factual basis for this plea.”
At trial, Detective Shawn Vinson testified that in November of 2012, he became involved in an investigation of a possible “meth lab” at 2321 Justin Lane in Harvey, Louisiana. On November 8, 2012, Detective Vinson and other officers went to the residence and ran a name check on the legal occupant of the residence, Christina Wallace. Detective Vinson learned that Ms. Wallace had a traffic attachment. When Ms. Wallace arrived at the residence, she was arrested on the traffic attachment. In the doorway of the house, Detective Vinson made contact with other occupants of the residence, including defendant and his father, Jefferson UFaggard, Sr., Detective Vinson testified that from the doorway, in plain view, the officers could see components of what they believed was a “meth lab.” He further testified that there was a “chemical smell.”
Ms. Wallace signed a consent to search form, and the officers entered the residence. Detective Vinson testified that the officers recovered “precursors or ingredients to use in methamphetamine or making methamphetamine” including brake fluid, tinfoil, camping fuel, cold packs, clear plastic bags with “crystalized white substances” and “white powder residue,” and a blender containing a “white powdery substance.” He also testified that officers recovered a spoon with cotton in it and an “off-white dry liquid substance,” and some used syringes. - Detective Vinson further testified that officers discovered a clear mason jar with tubes extending from it, which he stated was commonly called a “one-pot system” used in the creation of methamphetamine,.
Christina Wallace ‘testified that in November of 2012, she lived at 2321 Justin Lane. She testified that she pled guilty to creation or operation of a clandestine laboratory in order to “get out of jail,” but she did not commit the crime. Ms. Wallace stated that she was dating defendant in November of 2012 and that they used controlled dangerous substances together, but neither of them engaged in the creation or operation of a methamphetamine lab. Although she allowed defendant, his father, Jefferson Faggard, Sr., and his mother, *842 Janet Hamblen, to occasionally sleep at her residence, Ms. Wallace did not see anyone engagé in the production of methamphetamine.
Pamela Cyprian, a forensic scientist, was accepted as an expert in the examination and analysis of controlled dangerous substances. Ms. Cyprian testified that she analyzed evidence recovered from Ms. Wallace’s residence and it contained a substance that she conclusively identified as methamphetamine.
InDeputy Matthew Thomas testified that on October 9, 2013, between 3:00 and 3:30 a.m., he was on patrol when he saw a suspicious man, later identified as defendant, riding a bicycle 'with several bags attached to it, including a-golf bag with several golf clubs. Deputy Thomas asked defendant to stop and talk to hirfi, and defendant complied. Defendant indicated that his name was Joshua Faggard and that his birthdate was February 23, 1978. According to Deputy Thomas, the last name, Faggard, reminded him that officers Were looking for Jefferson Faggard. He stated that he asked defendant if he knew Jefferson Faggard, and defendant replied that he was his brother. After communicating on the “N.C.I.C. channel,” everything came back clear for the name Joshua Faggard, so Deputy Thomas allowed defendant to leave. However, when he returned to his vehicle and ran the. name Jefferson Faggard with the.birthdate provided by defendant, the computer showed a photograph of defendant.
Deputy Thomas testified that he located defendant again and asked him to stop, but defendant fled, discarding his bicycle and bags in the process. A backpack connected to the bicycle began to emit smoke and a green -substance began to “ooze” out. Deputy Thomas testified that the fire department pulled items out ofthe backpack, including commercial lye, drain cleaner, a Gatorade bottle with an unknown substance, a pack of lithium batteries, and a soda bottle containing a green 'fluid and with a “hose attached to the bottle.”
Deputy Dwain Rullman testified that on February 6, 2014, at approximately 9:30 p.m. or 10:00 p,m., he responded to a 9-1-1 call regarding two suspicious individuals on Carol Sue; Avenue. Deputy Rullman saw a suspicious person, later identified- as defendant, riding a bicycle. He stated that defendant was wearing gloves, had a backpack, and was hurrying towards'-the exit gate of an apartment complex. Deputy Rullman testified that he stopped defendant, who advised him that his name was Joshua' Badeaux and provided his birth-date as August 23, 1978. |7According to Deputy Rullman, when he ran the information provided by defendant, nothing came up in the system. He attempted to detain defendant because he believed that defendant gave him a false name, but defendant pushed him and fled to an apartment.
According to Deputy Rullman, he caught up with defendant as he pounded on the apartment door. Defendant continued to resist, so two other officers responded and assisted him in apprehending defendant. Deputy Rullman conducted a search of defendant’s person and found identification showing that he was Jefferson Faggard and also some narcotics. On defendant’s person, he also found plastic bags containing a white-residue, later determined to be methamphetamine, a pill canister containing a white residue, and a syringe. Deputy Rullman arrested defendant for possession of methamphetamine. At the time of his arrest, defendant had an, attachment for his arrest for creation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance.
Paul Forst, an employee of a company called AFRIS, testified that AFRIS runs an electronic system to track over-the- *843 counter sales of Sudafed and Ephedrine products. According to Mr, Forst, Louisiana law requires that no more than nine grams of Sudafed or Ephedrine be purchased by an individual in a 30-day period. Mr. Forst testified that sales logs showed that there were 107 transactions associated with defendant’s name between May 31, 2012 and February 3, 2014.
Detective Chris Comeaux was accepted as an expert in methamphetamine manufacturing. Detective Coméaux testified that the essential ingredient for a “complete one-pot meth' lab” is pseu-doephedrine, which is contained in over-the-counter nasal decongestants. Detective Comeaux further explained the common processes and procedures for making methamphetamine.'
[ ¡Detective Comeaux. testified that the items recovered -from Ms. Wallace’s residence on Justin Lane could be used to manufacture methamphetamine using a “one-pot meth lab.” Detective Comeaux also testified that the items pulled out of the backpack on defendant’s bicycle during the October 9, 2013 incident were related to the production of methamphetamine. He stated that they are supplies used to create or . operate a clandestine laboratory.
Finally, Detective Comeaux testified regarding the plastic bags found in defendant's pockets during the February 6,2014 incident. He stated that it appeared that the plastic bags were used in the methamphetamine manufacturing process because of the Way they were folded and the leftover residue in the bags.

ANDERS BRIEF

Under the procedure adopted by this Court in State v. Bradford, 95-929, pp. 3-4 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110-11,[2] appointed appellate counsel has filed a brief asserting that he has thoroughly reviewed the trial court record and cannot find any n'on-frivolous issues to raise on appeal. Accordingly, pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241 (per curiam), appointed counsel requests permission to withdraw as counsel of record.
In Anders, supra, the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if he finds the case to be wholly frivolous after a conscientious examination of it. The request must be accompanied by “a brief referring to any-, thing in the record that might arguably support the appeal” so as to provide the reviewing court “with a basis for determining whether appointed counsel have fully performed their duty, to support their clients’ appeals to the best of their ability” and to assist the reviewing court |a“in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw.” ’ McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).
In Jyles, 96-2669 at 2, 704 So.2d at 241, the Louisiana Supreme Court stated that an Anders brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. The supreme court explained that an Anders brief must demonstrate by full discussion and analysis that appellate counsel “has east an advocate’s eye over *844 the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration.” Id.
When conducting a review for compliance with Anders, an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous. If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. Bradford, 95-929 at 4, 676 So.2d at 1110.
In the present case, defendant’s appellate counsel asserts that after a careful review of the record, he can find no non-frivolous issues to raise on appeal. Counsel states that defendant entered an unqualified guilty plea, thereby waiving all non-jurisdictional defects. He notes that' no reservation of rights under State v. Crosby[3] was made as part of the plea agreement.
In addition, appellate counsel notes that defendant indicated during the guilty plea colloquy that he had not been forced, coerced, or threatened to enter the hpguilty plea, that he was pleading guilty because he was in fact guilty, and that he understood his rights, the charges, and the sentences he would receive in exchange for the guilty pleas. Counsel states that defendant was specifically advised that he was giving up his right to an appeal. Appellate counsel also notes that the waiver of rights form sets forth all of the rights defendant was waiving by pleading guilty. Counsel asserts that there is no basis in the record to support the conclusion that the guilty pleas are constitutionally infirm.
Further, appellate counsel asserts that the plea bargain appears to have been advantageous to appellant. He explains that the agreement resulted in a 16-year sentence on a “triple bill,” when defendant faced up to 30 years imprisonment for violating La. R.S. 40:983. Counsel also notes that if a “quad bill” had been filed, defendant would have been exposed to a potential life sentence.
An independent review of the record supports appellate counsel’s assertion that there are no non-frivolous issues to be raised on appeal. The bill of information properly charged defendant and presents no non-frivolous issues for appeal. As required, it plainly, concisely, and definitely states the essential facts constituting the offenses charged, and it sufficiently identifies defendant and the crimes charged. See La.C.Cr.P. arts. 464-466. As reflected by the minute entries and transcripts, defendant appeared at each stage of the proceedings against him. As such, defendant’s presence does not present any issue for appeal.
Prior to his guilty pleas, defendant filed pre-trial motions to suppress statements, evidence, and identification. While the record does not indicate that all of defendant’s motions were ruled upon, defendant waived the motions by pleading guilty without raising the issue. See State v. Corzo, 04-791, p, 2 (La.App. 5 Cir. 2/16/06), 896 So.2d 1101, 1102. Defendant also filed a pro se motion to quash, which was denied, and made an oral motion to sever count three. However, defendant did not preserve these, or any other pretrial ruling, for |nappellate review under Crosby, supra. See State v. Fontenberry, 09-127, p. 7 (La.App. 6 Cir. 10/27/09), 27 So.3d 904, 909, writ denied, 09-2665 *845 (La.5/28/10), 36 So.3d 246, in which this Court found that the denial of a motion to sever may be preserved for appellate review pursuant to Crosby, supra.
The record shows that defendant was aware that he was pleading guilty to two counts of creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance and one count of possession of methamphetamine. The transcript and waiver of rights form both reflect that defendant was advised of his rights to a trial by jury or by the court, to confront and cross-examine his accusers, against self-incrimination, and that by pleading guilty he was waiving those rights. Thus, defendant was properly advised of his Boykin rights, and the record reflects that defendant indicated that he understood he was waiving these rights. 'In addition, defendant indicated that he had discussed the case with his attorney, that the waiver of rights form was explained to him, and that he understood the waiver of rights form. Defendant indicated that he had not been forced, intimidatéd, coerced, or promised anything if he pleaded guilty. The transcript reflects that defendant indicated he understood that by pleading guilty he was admitting that he had, in fact, committed the charged crimes.
The transcript and the waiver of rights form both reflect that defendant was advised that he faced a maximum sentence of 15 years imprisonment on each of the two counts of creation or operation of a clandestine laboratory and a maximum sentence of five years imprisonment for possession of methamphetamine. They also reflect that defendant was advised that if his guilty pleas were accepted, he would be sentenced to 15 years imprisonment on counts one and two and five years on count three, to run concurrently with each other. The State also agreed to file a “triple bill,” instead of alleging that defendant was a “quadruple offender,” in exchange for his guilty plea. '
liaThe imposed sentences of 15 years imprisonment on counts one and two, and five years on count three, fall within the sentencing ranges prescribed by statute. See La. R.S. 40:983; La. R.S. 40:967. Also, defendant was sentenced in conformity with a plea agreement. La.C.Cr.P. art. 881.2(A)(2) precludes a defendant from seeking review of his sentence imposed in conformity with a plea agreement, which was set. forth in the record at the time of the plea. See State v. Ott, 12-111, pp. 9-10 (La.App. 5 Cir. 10/16/12), 102 So.3d 944, 951.
In addition, defendant stipulated to -the multiple offender bill of information alleging that he was a third felony offender. Our review of the multiple offender proceedings and sentencing reveals no non-frivolous issues for appeal.
Based on the foregoing, we find that the proceedings surrounding defendant's guilty pleas, multiple offender stipulation, and sentencing do not present any non-frivolous issues to be raised on appeal. Appellant counsel’s brief adequately demonstrates by full discussion and analysis that he has reviewed the trial court proceedings and.cannot identity any basis for a non-frivolous appeal, and an independent review of the record supports counsel’s assertion.

PRO SE SUPPLEMENTAL BRIEF

Defendant has filed a pro se supplemental brief setting forth seven assignments of error. In his first pro se assignment of error, defendant asserts that the record does not show that he was properly “Boyk-inized” or that his guilty plea as to count two was intelligently and voluntarily made. Specifically, he argues that the trial judge failed to inform him of the nature of the charges against him by failing to inform *846 him of the “crucial, elements’* of the crime to which he was pleading guilty. Defendant asserts that the judge also failed to inform him that the State had the burden of proving that he was guilty beyond a reasonable doubt. Defendant also states that,the trial judge failed to inform him of the minimum and maximum sentencing range and of his right to a jury trial.
haDespite defendant’s assertions, as previously stated in the Anders discussion, the record reflects that defendant was informed that he was waiving his right to a jury trial. Although the record does not reflect that defendant was advised that the State had to prove he was guilty beyond a reasonable doubt, the record does show that defendant was informed that he was waiving his -right to assert that the State may not be able to prove the charges against him. Further, Boykin[4] does not require that a defendant be informed that the State’s burden of proof is beyond a reasonable doubt. See also La.C.Cr.P. art. 556.1.
Defendant also argues that the trial judge failed to inform him of the elements of the crime. La.C.Cr.P. art. 556.1 outlines the duty of the court when accepting a plea of guilty in- felony cases, providing, in pertinent part:
■A, In a felony case, the court shall not accept a plea of guilty or nolo con-tendere without first addressing the defendant personally in open court and-informing him of,-and determining that he understands, all of the following:
(1) The nature of the charge to which ■the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
[Emphasis added.]
In State v. Respert, 14-769, p. 10 (La.App. 5 Cir. 2/25/15), 168 So.3d 839, 845, this Court, citing State v. Wilson, 12-819 (La.App. 5 Cir. 5/16/13), 118 So.3d 1175, 1177, stated the following:
The test for the validity of a guilty plea does not depend on whether the trial court specifically informed the defendant of every element of the offense. Rather, the defendant must establish that he lacked awareness of the essential nature .of the offense to which he was pleading. Violations of Article 556.1 that do not rise to the level of Boykin violations are -subject to harmless error analysis. To determine whether a violation of Article 556.1 is harmless, the proper inquiry is whether the defendant’s knowledge and comprehension of the full and correct information would have likely affected his willingness to .plead guilty.
| uSubsection E of La.C.Cr.P. art. 556.1 further provides that “[a]ny variance from the procedures required hy this Article which does not affect substantial rights of the accused shall not invalidate the plea.” The failure to fully comply with Article 556.1 is a statutory' breach, rather than a constitutional breach, and thus, the defendant is required to show prejudice as a result of the error. Respert, supra. See also Ott, 12-111 at 11, 102 So.3d at 952.
In the present case, defendant acknowledged on the waiver of rights form that he understood the nature of the charges against him. As previously discussed, the record shows that defendant was aware 'that he was pleading'guilty to two counts of creation or operation of a clandestine laboratory for- the unlawful manufacture of a controlled dangerous substance and one count of possession of methamphetamine. The record shows *847 that defendant was properly advised of his Boykin rights. It is further noted that the transcript reflects that defendant never asked any questions about the nature of the charges during the plea colloquy or made any indication that he did not understand the charges or any element of the charges.
Defendant has failed to establish that-he lacked awareness of the essential nature of the offenses to which he pleaded guilty, or that he was prejudiced by the trial court’s failure to fully comply with the provisions of La.C.Cr.P. art. 556.1. Accordingly, the trial court’s failure to inform defendant of the elements of the offenses and the nature of the charges was harmless;
In addition, defendant argues that he was not informed of the maximum and minimum sentence exposure. The record reflects that during the guilty plea colloquy and on the waiver of rights form, defendant was advised of the maximum sentencing exposure that he faced for all three counts. The record does not show that he was advised as to the minimum penalties he faced, as required by La.C.Cr.P. art. 556.1. However, a violation of Article 556.1 for the failure to inform a | ^defendant of the minimum penalty does not cause prejudice if defendant knew the sentence he would receive, and he received that sentence. An advisement of the agreed upon sentence is sufficient for compliance with La.C.Cr.P. art. 556.1. See State v. Craig, 10-854, p. 7 (La.App. 5 Cir. 5/24/11), 66 So.3d 60, 64; State v. Broadway, 40,569, p. 7 (La.App. 2 Cir. 1/25/06), 920 So.2d 960, 963. As such, the trial court’s failure to properly advise defendant of the minimum sentence was harmless. Based on our review of the record and the applicable law, we find no merit in defendant’s first pro se assignment of error.
In his second pro .se assignment of error, defendant asserts that the trial court erred by denying his motion to withdraw guilty plea, which was. incorporated, in his motion for appeal. He also argues that the trial judge erred by failing to set a contradictory hearing on his motion to withdraw guilty plea.
First, the record reflects that defendant did not request a hearing on the motion to withdraw guilty plea and never raised the issue of failure to hold a hearing in the trial court. Thus, defendant has not preserved this issue for appeal. See State v. Gonzales, 97-767 (La.App. 5 Cir. 01/14/98), 707 So.2d 82, 84, citing La. C.Cr.P. art. 841.
With regard to defendant’s claim that the trial court erred by denying his motion to withdraw guilty plea, we find no merit in this argument.
Once a defendant is sentenced, only those guilty pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. State v. Boston, 14-632, pp. 4-5 (La.App. 5 Cir. 12/16/14), 167 So.3d 82, 85-86; State v. McCoil, 05-658 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124. Generally, a denial of a motion to withdraw a guilty plea will not be reversed on appeal if the record clearly shows that the defendant was informed of his rights and the consequences of his plea and that the plea was entered into voluntarily. Boston, supra.
|.1fiIn the present case, the record reflects that defendant was informed of his rights and the consequences of his plea and that the plea was entered into voluntarily. Accordingly, the trial court did not err by denying defendant’s motion to withdraw guilty plea. This assignment is without-merit.
.In his thirdpro. se. assignment of error, defendant asserts that he was denied due process of law and the right to a fair trial *848 when the trial court granted the State’s motion for joinder of the three offenses for trial. In his fourth pro se assignment of error, defendant argues that the trial court erred in granting the State’s motion for continuance, because the State failed to show sufficient grounds for the continuance or that a continuance was in the interest of justice.[5]
If a defendant pleads guilty, he normally waives all non-jurisdictional defects in the proceedings leading up to the guilty plea and precludes review of such defects either by appeal or post-conviction relief. Craig, supra at 62-63.
In the present case, while we do not find that the trial court erred in allowing the joinder of offenses for trial, we note that defendant entered unqualified guilty pleas, thereby waiving his right to review of any non-jurisdictional defect regarding the joinder of offenses. See State v. Lisotta, 11-1461, p. 3 (La.App. 3 Cir. 6/6/12), 91 So.3d 1247, 1250. Therefore, even if there had been a defect in the joinder of offenses, defendant is precluded from seeking review of this issue on appeal due to his unqualified guilty pleas.
Likewise, due to defendant’s unqualified guilty pleas, defendant is precluded from seeking review of the trial court’s grant of the State’s motion for continuance |17of the trial. Accordingly, we find that defendant is not entitled to any relief pursuant to his thmd and fourth pro se assignments of error.
In his fifth pro se assignment of error, defendant argues that his counsel was ineffective during the trial court proceedings. Specifically, he asserts that defense counsel failed to file a motion to sever count two, failed to refile a motion for preliminary examination that counsel had withdrawn after defendant filed a pro se motion to quash, failed to file any pre-trial motion demonstrating that there was no basis to support count two, and failed to exclude Detective Vinson’s hearsay testimony that defendant resided at Ms. Wallace’s residence.
The Sixth Amendment to the United States Constitution and Article 1, § 13 of the Louisiana Constitution safeguard a defendant’s right to effective assistance of trial counsel. State v. Thomas, 12-1410, p. 5 (La.9/4/13), 124 So.3d 1049, 1053. According to the United States Supreme Court’s opinion in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant asserting an ineffective assistance claim must show: 1) that defense counsel’s performance was deficient and 2) that the deficiency prejudiced the defendant. The defendant has the burden of showing that “there is a reasonable probability that, but for counsel’s unprofessional errors, the results of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
Generally, an ineffective assistance of counsel claim is most appropriate *849 ly addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, rather than by direct appeal. State v. Jones, 13-99, p. 10 (La.App. 5 Cir. 8/27/13), 123 So.3d 758, 765. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. Id.
118In the present case, the record is sufficient to address defendant’s ineffective assistance of counsel claims. We note that all of the transcripts related to defendant’s claims are included in the record, including the motion hearings and the State’s presentation of testimony at trial.
In order to prevail on an ineffective assistance of counsel claim, the accused must overcome a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. An alleged error that is within the ambit of trial strategy does not establish ineffective assistance of counsel because “opinions may differ on the advisability of such a tactic.” State v. Wise, 13-247, pp. 14-15 (La.App. 5 Cir. 11/9/13), 128 So.3d 1220, 1230, writ denied, 14-253 (La.9/12/14), 147 So.3d 703.
In the present case, defense counsel’s actions described in defendant’s brief regarding pre-trial representation fell within the ambit of trial strategy. Defendant has not demonstrated that, but for counsel’s alleged unprofessional conduct regarding pre-trial representation, the outcome would have been different. Accordingly, defendant’s fifth pro se assignment of error is without merit.
In his sixth pro se assignment of error, defendant argues that there is nothing in the trial record, which the State used as its factual basis, -to validly establish “factual guilt” to support his guilty pleas.
This Court has previously found that the due process clause imposes no constitutional duty on state trial judges to ascertain a factual basis prior to accepting a guilty plea. State v. Hoppens, 13-948 (La.App. 5 Cir. 04/23/14), 140 So.3d 293, 301, writ denied, 14-1856 (La.9/11/15), 176 So.3d 414; State v. Smith, 09-769 (La.App. 5 Cir. 3/9/10), 38 So.3d 894, 896 n. 1, writ denied, 10-843 (La.11/5/10), 50 So.3d 812. Due process requires a factual basis for a defendant’s guilty plea only when a defendant proclaims his innocence, or when the trial court |]9is otherwise put on notice that there is a need for an inquiry into the factual basis. Hoppens, supra.
In the present case, defendant did not maintain his innocence at the plea hearing; rather, he admitted his guilt .on two counts of operating a clandestine laboratory for the unlawful manufacture of a .controlled dangerous substance and one count of possession of methamphetamine. Accordingly, the trial court had no constitutional duty to ascertain a factual basis prior to accepting defendant’s guilty plea in this case. Nevertheless, we note that the State did provide a factual basis in this case that included all trial testimony presented' prior to defendant’s guilty pleas. Defendant was clearly aware of the facts of the State’s case. This assignment of error is without merit.
In his seventh and final pro .se assignment of error, defendant argues that his 15-year enhanced sentence on count two is illegal. He argues that because an amendment to the habitual offender statute, La. R.S. 15:529.1(G), effective July 6, 2010, added the words “at hard labor” to the provision regarding restriction of the benefits of probation and suspension of sentence, his prior convictions from before *850 2010 could not be used in this case to find that he is a multiple offender.
The Louisiana Supreme Court has held a defendant should be sentenced pursuant to the version of La. R.S. 15:529.1 in effect at the time of the commission of the charged offense. State v. Parker, 03-0924 (La.4/14/04), 871 So.2d 317, 326. Therefore, defendant was subject to the habitual offender statute as it existed at the time of the commission of the underlying offense for count two, which was November 8, 2012. Accordingly, the trial court properly applied the version of La. R.S. 15:529.1 in effect at the time of the commission of the underlying offense.
Further, to the extent that defendant argues that the trial court erred in ordering his enhanced sentence to be served at hard labor, we note that although the -“at hard labor” language was added to. La. R.S. 15:529.1(G) in 2010, the |2naddition of that condition to the habitual offender law did not modify the sentencing provisions of any underlying felony offense.
In State v. Robinson, 46,330 (La.App. 2 Cir. 2/18/11), 54 So.3d 1292, writ denied, 11-668 (La.3/2/12), 83 So.3d 1041, the appellate, court noted that a sentence enhanced under the habitual offender statute is computed by referring, to the underlying offense. The court also found that the sentencing conditions required by La. R.S. 15:529.1(G) are additions to, rather than replacements of, those conditions required by the sentencing provision for the underlying offense.' Id.
In the present case, the trial court did not err by ordering defendant’s enhanced sentence to be served at hard labor, and his enhanced' sentence on count two is not illegal. This assignment is without merit.

ERRORS PATENT

Defendant requests an error patent review. • However; this Court routinely reviews the récord for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. Our review reveals ho errors requiring corrective action'.

DECREE

For the foregoing .reasons, we affirm defendant’s convictions and sentences. We also grant appellate counsel’s motion to withdraw as counsel of record.

AFFIRMED: MOTION TO WITHDRAW GRANTED

. In the record, defendant is sometimes referred to with the suffix, "Jr.” However, the bill of information and commitment do not include the suffix in defendant's name.

. In Bradford, supra, this Court adopted the ' procedures outlined in’ State v. Benjamin, 573 So.2d 528, 530 (La.App. 4 Cir.1990), which were sanctioned by the Louisiana Supreme Court in State v. Mouton, 95-0981, pp. 1-2 (La.4/28/95), 653 So.2d 1176, 1177 (per curiam).

. State v. Crosby, 338 So.2d 584, 586 (La.1976).

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. On January 27, 2015, the State amended the bill of information to include count three, possession of methamphetamine. On February 2, 2015, which was a setting for trial, defendant made an oral motion to sever count three. A hearing was held on the same date, and the trial court stated that either count three would be severed or defendant would be granted a continuance. Defense counsel indicated that he did not want a continuance. Therefore, the trial court granted defendant’s oral motion to sever count three and set trial for the next morning.
On Februaty 3, 2015, the State filed a written motion for continuance. The trial court granted the State’s motion and reset the trial to March 2, 2015, citing "the interest of justice” and "to make sure that Mr. Faggard is treated fairly and to be financially responsible.”